**Bill Ivan MIMS, Plaintiff-Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant-Appellee.**

**No. 78–1950**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Oct. 16, 1978.

Rhodes, Doscher, Chalk & Heatherly, John Allen Chalk, Abilene, Tex., for plaintiff-appellant.

Kenneth J. Mighell, U. S. Atty., William L. Johnson, Jr., Asst. U. S. Atty., Fort Worth, Tex., for defendant-appellee.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Before GOLDBERG, AINSWORTH and HILL, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant Bill Mims filed an application in October 1974 for a period of disability and for disability benefits under sections 216 and 223 of the Social Security Act, as amended, 42 U.S.C. §§ 416 and 423, claiming that he has been continuously disabled since November 1964 due to a back injury and to a bronchial tube condition. The agency denied his application both initially and on reconsideration. Mims then requested a hearing which took place on July 28, 1976, with Mims, his wife and his attorney taking part. On October 1, 1976, the Administrative Law Judge rendered a decision upholding the denial of benefits. This decision became the final decision of the Secretary upon its affirmance by the Appeals Council on February 9, 1977. Mims sought judicial review pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g), in the district court which, on cross motions for summary judgment, affirmed the Secretary's denial of benefits. We reverse.

Appellant, a white male resident of Abilene, Texas, was born in 1917 and completed the eleventh grade and two years of junior college. From January 1947 to November 1964 he worked for the Texas Highway Department in a series of positions including rodman, junior inspector, party chief and senior inspector. These jobs all involved considerable walking and standing. Previously he had held a variety of jobs; he had issued parts to airplane mechanics, cleaned and repaired airplane engines, acted as a rodman with a surveying crew, and

shingled roofs. He left the Highway Department voluntarily in 1964 to avoid a transfer to El Paso. Since then Mims' only employment has been a brief stint as a construction laborer in 1966; he left that job after five days due to back pain and an inability to lift objects.

Mims has had back trouble since the mid-1950's when he first injured it pulling a rod out of the ground. Although Mims left the Highway Department in 1964 to avoid transfer, he testified that at that time he was already experiencing severe back problems which thereafter prevented him from working. His condition worsened steadily after 1964 until, by the early part of 1968, his back was "going out" every two or three months. Although Mims obtained some relief through chiropractic treatment, persistent pain in his back and legs finally necessitated surgery on a damaged lumbar disc in May and again in September of 1968.

The second operation involved removal of the disc and subsequent examination indicated that there had been injury to the nerve roots along the spinal cord. Mims testified that since the operation he has experienced constant pain in his back and legs, partial paralysis of his legs, great difficulty in getting about, drowsiness, and an inability to remain up or to sit for more than a few hours at a time or to do anything but very light housework.

The amended Social Security Act requires that a claimant prove not only that he is unable to perform his previous work but that he is incapable of performing "any other kind of substantial gainful work which exists in the national economy."[1] In

1. § 223(d), 42 U.S.C. § 423(d), reads in pertinent part:

(1) The term "disability" means—
(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

. . . . .

(2) For purposes of paragraph (1)(a)—
(A) an individual . . . shall be determined to be under a disability only if his

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence . . ., "work which exists in the national economy" means work which exists in significant numbers either in

this case Mims was last insured under the Act on March 31, 1970 and, therefore, must show that he was disabled as of that date.[2] The Act and the regulations promulgated thereunder further specify that the disability must result from an impairment that is medically demonstrable and documented by medical evidence.[3]

The function of a reviewing court is limited to determining whether the Secretary's findings are supported by substantial evidence considering the record as a whole.[4] Substantial evidence means

more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting, Consolidated Edison Co. v. N. L. R. B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). Our function is not to reweigh the evidence or to substitute our judgment for that of the Secretary. *Goodman v. Richardson*, 5 Cir., 1971, 448 F.2d 388. Given the strict requirements for showing disability and the limited scope of judicial review, reversals of the Secretary are quite rare while affirmances abound. *See, e. g., Laffoon v. Califano*, 5 Cir., 1977, 558 F.2d 253; *McDaniel v. Califano*, 5 Cir.,

1978, 568 F.2d 1172; *Turner v. Califano*, 5 Cir., 1977, 563 F.2d 669; *Gaultney v. Weinberger*, 5 Cir., 1974, 505 F.2d 943.

However, the claimant's burden is not insuperable.[5] The paucity of reversals in these cases does not mean

that we have abdicated our traditional judicial function of scrutinizing the record as a whole to determine the reasonableness of the decision reached. Nor is it to say that there can never be a case requiring reversal because of the usual finality accorded such decisions and the narrow scope of judicial review.

*Williams v. Finch*, 5 Cir., 1971, 440 F.2d 613, 615.

We find that the claimant has successfully carried his burden of showing that he was disabled as of March 31, 1970 and that there is an absence of substantial evidence in the record to support the Secretary's contrary conclusion. The record before us consists entirely of various medical reports and written statements by doctors submitted by Mims in support of his application, the forms submitted by Mims, the oral testimony of Mims and his wife, and the affidavits of five of his friends.

Dr. Rexford Anderson, a neurologist, examined Mims' back in November 1976 and

---

the region where such individual lives or in several regions of the country.

2. § 223(c)(1), 42 U.S.C. § 423(c)(1), defines insured status.

We confine our discussion to a consideration of Mims' back problems. In his application for benefits, Mims claimed that he was disabled due both to his back injury and to a bronchial tube condition. In the summer of 1974, Mims collapsed while mowing his lawn and sought medical care. From August to November 1974 he was treated by Dr. Victor Hudman, a neurologist, for chronic obstructive lung disease, hypertension and depression. In a letter dated June 1, 1976 Dr. Hudman stated that these maladies prevented Mims from functioning in gainful employment.

Since Mims makes no claim either that the bronchial condition existed prior to March 31, 1970 or that it somehow resulted from his back problems, the bronchial condition could not form the basis for an award of disability benefits. We, therefore, do not discuss it.

3. § 223(d), 42 U.S.C. § 423(d), further provides:

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

. . . . .

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

*See also,* 20 C.F.R. §§ 404.1501(c) and 404.-1502(b) (1977).

4. § 205(g), 42 U.S.C. § 405(g), reads in pertinent part:

The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . .

5. *See, e. g., Stubbs v. Matthews*, 5 Cir., 1977, 544 F.2d 1251; *Williams v. Finch*, 5 Cir., 1971, 440 F.2d 613; *Lewis v. Weinberger*, 5 Cir., 1975, 515 F.2d 584; *Stark v. Weinberger*, 7 Cir., 1974, 497 F.2d 1092; *DePaepe v. Richardson*, 5 Cir., 1972, 464 F.2d 92.

concluded in his report that "he has been disabled at probably 100% since at least 1969. He was most certainly disabled in March 1970." [6] Ralph Perkins, a chiropractor who had treated Mims in 1964, examined Mims in June 1976 and found "bone and disc degeneration with nerve impairment." Based on this examination and his knowledge of the type of surgery Mims had undergone, Perkins concluded in his report that "he will never be able to work without severe pain."

The balance of the medical evidence regarding claimant's back consists of reports written by physicians who examined or treated Mims between May 1968 and July 1971. [7] None of these reports specifically addresses the question of disability. Rather they contain general observations or remarks concerning Mims' condition without comment on his ability to pursue gainful employment. They do, however, unequivocally establish the existence of a severe back injury with accompanying nerve damage.

Dr. W. J. Bray, an orthopedist who examined Mims on September 4, 1968 and January 9, 1969, wrote that as of January 1969 "the patient was making satisfactory recovery and needed to continue on the program of increasing exercise and activities to tolerance. . . . It was felt that he did have some weakness of the left leg and some on the right from nerve root injuries and this may or may not be permanent. He will always be on a limited activity program, but he may well be able to return to some type of light work in time." Thus Dr. Bray did not consider Mims capable of doing light work at that time but thought that Mims might improve sufficiently to do such work in the future.

On July 2, 1969 Dr. David Hoehn examined Mims and diagnosed "considerable neuropathy . . . at the nerve root level." He concluded that "there is a possibility that this man had such severe injury that he will not clear up. However, I think that he should be evaluated again and further surgery considered."

In addition to the medical reports, Mims supplied the Secretary with considerable subjective evidence of pain and disability which was corroborated by his wife's testimony and affidavits of his neighbors. We have held that along with objective medical facts and doctors' diagnoses the Secretary must consider a claimant's individual symptomology. *DePaepe v. Richardson*, 5 Cir., 1972, 464 F.2d 92. Mims testified that after each operation he suffered considerable pain and could move about only with great difficulty using a walker and then crutches and a cane. For a time he had to wear a brace on his left leg. He experienced some paralysis of his legs, had difficulty controlling them and fell down often.

Despite some improvement since 1970, Mims' activity is still limited to light housework, including cooking supper and making a bed. He cannot do vacuuming or lifting, although he has mowed the lawn since 1970 when his son left for college. He testified that he is unable to bend over without pain or to stay up more than two or three hours. He suffers severe cramps in his feet whenever he stands for more than a few hours

6. Dr. Anderson's letter was not submitted until after the Administrative Law Judge had rendered his decision but was made available to the Appeals Council in its final review of Mims' application.

7. These medical reports include the case reports prepared by Hendrick Memorial Hospital where Mims had his operations in May and September of 1968; the diagnosis and the descriptions of the surgery by Dr. John C. O'Loughlin, the neurosurgeon who performed the operations; a physical therapist's evaluation dated June 4, 1968 from the West Texas Rehabilitation Center (WTRC) which Mims attended briefly after the first operation; a status report from WTRC dated July 22, 1968; a letter written August 13, 1968 from Dr. O'Loughlin to Dr. David Hoehn of WTRC requesting an evaluation; Dr. Hoehn's report dated September 3, 1968 and another report from Dr. Hoehn dated July 2, 1969; a letter written June 16, 1976 by Dr. W. J. Bray, an orthopedist, reporting on examinations that took place on September 4, 1968 and January 9, 1969; a letter from Dr. O'Loughlin to the Montgomery Ward Life Insurance Co. dated February 24, 1969; and a letter written May 19, 1976 by Dr. Travis Smith regarding a life insurance examination that took place on July 23, 1971.

and he is unable to wear leather street shoes due to the pain in his feet. Since 1974 he has driven an automobile infrequently and with difficulty. He presently takes *no medication for pain.*

Mims stated that he stopped seeking medical treatment for his back after 1969 because the operations had been unsuccessful and he had no money; his wife was the family's sole support and he had a son in college.[8] He delayed applying for disability benefits until 1974 because he had not wanted to use them unless he had to and until that time he believed he could get along without benefits.

Mrs. Mims corroborated her husband's testimony in essential details. She stated that his legs were usually cold and often required rubbing during the night. They are also subject to periodic swelling. Finally, the affidavits of five friends and neighbors[9] who have had the opportunity to observe Mims since 1969 state generally that he has been in constant severe pain and that he has been unable to walk without difficulty, to remain standing or seated for any appreciable period of time or to participate in family and social activities.

We find that appellant has made out a prima facie case of disability as of May 19, 1968, the date appellant entered the hospital for his first back operation.[10] Recognizing the limited scope of judicial review in this area, we have carefully reviewed the record in search of substantial evidence to support the Secretary's denial of benefits. There is no such evidence in the record. The Secretary did not order an independent evaluation of Mims' condition by either a doctor or a vocational expert and nowhere in the record does anyone state that Mims is capable of functioning in some sort of gainful employment. As we said in *Williams v.*

*Finch,* 5 Cir., 1971, 440 F.2d 613, under similar circumstances:

The salient feature of this case, which sets it apart from the usual Social Security disability case, is that there is no statement of record by any medical expert that claimant is *not physically disabled.*

Id. at 615–616 (emphasis in original).

The Administrative Law Judge decided that Mims "had by February 24, 1969, recovered from [his] surgeries and regained the residual functional capacity to resume engaging in substantial gainful activity by working as a parts clerk or inspector as he had previously done and continued to have the capacity to do so when he last met the special earnings requirements of the Social Security Act, as amended, on March 31, 1970." Evidently the Administrative Law Judge chose February 24, 1969 on the basis of a letter written that day by Dr. J. C. O'Loughlin, Mims' surgeon, to the Montgomery Ward Life Insurance Co. regarding Mims' application for life insurance. Dr. O'Loughlin briefly reviewed Mims' surgery and then stated: "The patient had some weakness of his left leg following surgery but this is improving quite well. At the present time the patient remains in the convalescent phase and his improvement is satisfactory." Given the context in which the letter was written and the fact that it was not addressed to Mims' ability to work, the letter does not constitute substantial evidence to support a denial of benefits. On the contrary, we read Dr. O'Loughlin's statement that "the patient remains in the convalescent phase" to mean that as of February 24 Mims was still convalescing and as yet unable to work.

In the absence of evidence anywhere in the record that Mims can engage in some

---

**8.** Mims did receive treatment for chronic obstructive lung disease in 1974. See note 2, supra.

**9.** Frances Y. (Von) French; Nettie Ables, Wilma Higgins, Leroy Hammond; and Rita M. Anz.

**10.** Inevitably, fixing the onset of disability in a case like this is somewhat arbitrary. With a

steadily worsening condition it is impossible to identify with certainty the exact moment at which a physical impairment becomes disabling for purposes of the Social Security Act. In this case we choose the date when appellant first entered the hospital because on this date we first have objective medical evidence of a physical impairment serious enough to result in disability.

sort of gainful employment we are unable to hold that the Secretary's denial of benefits is supported by substantial evidence. Accordingly, we remand this case to the district court with instructions to issue an order directing the Secretary to grant appellant disability benefits as of May 19, 1968.

REVERSED AND REMANDED.