Karen DOSS, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. CIV.A.02–G–0937–S.

United States District Court,
N.D. Alabama,
Southern Division.

Feb. 27, 2003.

J. T. Simonetti, Jr., Birmingham, AL, for Karen A. Doss.

Alice H. Martin, U.S. Attorney, Lane H. Woodke, U.S. Attorney's Office, Birmingham, AL, Mary Ann Sloan, Reginald V. Speegle, Social Security Administration–Office of General Counsel, Atlanta, GA, for Jo Anne B Barnhart, Commissioner of Social Security Administration.

### MEMORANDUM OPINION

GUIN, District Judge.

Plaintiff brings this action pursuant to the provisions of section 205(g) of the Social Security Act, [hereinafter the Act], 42 U.S.C. § 405(g),[1] seeking judicial review of

---

**1.** 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for Supplemental Security Income [hereinafter SSI].

a final adverse decision of the Commissioner of Social Security [hereinafter Commissioner]. Application for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended, was filed on April 24, 2000. These applications were denied initially and upon reconsideration. Request for a hearing before an administrative law judge [hereinafter ALJ] [Robert G. Faircloth] was granted, and a hearing was held July 3, 2001. The ALJ's decision to deny benefits was handed down September 27, 2001, six days after an opinion letter and results of hearing tests were submitted. Plaintiff's request for review by the Appeals Council was denied February 7, 2002. An appeal to this court followed.

Plaintiff is a 39 year old female with a twelfth grade education. Past relevant work is as a medical secretary (semi-skilled work at a sedentary exertional level), a file clerk in x-ray (semi-skilled work at a light exertional level), and as a retrieval clerk (semi-skilled work at a light exertional level). Plaintiff claims disability as a result of a severe hearing impairment, an anxiety disorder, irritable bowel syndrome, carpal tunnel syndrome, pneumothorax (collapsed lung), and atrial fibrillation. She last worked March 10, 1995, and claims disability from that date.

## I. IMPAIRMENTS

### A. HEARING IMPAIRMENT

Ms. Doss claims that she has suffered with a hearing loss since she was eleven years old and that the loss of hearing has become progressively worse. Doctors have told her that the loss will continue to deteriorate. She wears hearing aids in both ears. The left hearing aid is fitted with a telephone coil. She has some use of the telephone with the aid of the telephone coil and an amplified hand set. Plaintiff testified that in order to understand people she has to be looking directly at them while they speak and that they must be close by.

A consultative examination of plaintiff's hearing was ordered by the Commissioner. On September 5, 2000, Dr. Gary T. Turner examined her. His notes reflect that she has a long history of otologic problems. She was seen and treated by Dr. Rodney Ott. When she was younger she had tubes put in her ears for fluid problems. She apparently developed adhesive otitis media in the right ear and saw Dr. Dennis Pappas who declined to perform surgery. Dr. John Shea in Memphis did operate[2] and diagnosed chronic adhesive otitis.[3] Since then, according to Dr. Turner's notes. she has had "progressive hearing loss in both ears." Examination revealed a lot of tympanal sclerosis in the right ear with an area of adhesive changes in the inferior posterior part of the tympanic membrane. Dr. Turner's notes report the following:

> Bilateral significant sensorineural hearing loss, chronic Eustachian tube dysfunction producing adhesive changes in the right ear.

Test results were included with Dr. Turner's report.

Clinical psychologist Laurence W. Bannon, Ph.D. performed another consultative disability evaluation on October 26, 2000. A portion of his summary follows:

---

**2.** The Shea Clinic Report of plaintiff's October 28, 1992, operation by Dr. John J. Shea III is in the record. Dr. Shea performed a right Tympanaplasty. Both the preoperative and postoperative diagnosis was chronic adhesive otitis media.

**3.** Otitis is inflammation of the ear which may be marked by pain, fever, abnormalities oh hearing, hearing loss, tinnitus, and vertigo. *Dorland's Illustrated Medical Dictionary* (W.B. Sanders Company 28th ed 1994) [hereinafter *Dorland's* ].

Her complaints are primarily physical, but her difficulties, especially in relation to employment, are related to limitations in hearing. She will have difficulty understanding and carrying out directions in relation to hearing, but would be cooperative with supervisors and coworkers.

Of particular importance is the September 21, 2001, report from Local Hearing Aid Service.[4] This report, signed by Pamela B. Poole, Audiologist MS/CCC–A, was submitted six days before the ALJ's decision date and was received and considered by the Appeals Council. Because of its importance major portions follow:

> The purpose of this letter is to address the hearing status of Ms. Karen Doss, one of your clients. She was seen in our office on September 21, 2001 for an audiological evaluation. Ms Doss' first evaluation by this office was in December of 1998 and she has worn hearing aids for approximately fifteen years.
>
> Test results of this date, indicate a moderate to severe sensorial loss of hearing sensitivity for each ear. Speech reception thresholds are in good agreement with pure tone averages and discrimination among spoken words is adequate bilaterally. Otoadmittance testing revealed Type A (normal) tympanograms for each ear with acoustic reflexes ab-

sent. **Ms. Doss will experience difficulty hearing speech in all listening situations even with adequate amplification. A hearing loss of this level will present communication difficulties in most work situations.** (Emphasis added.).

> **Results obtained on this date represent a significant drop in hearing sensitivity for each ear since her last evaluation in December of 1998. The level to which her hearing has fallen makes adequate communication with amplification questionable.** (Emphasis added.).[5]

## B. ATRIAL FIBRILLATION

Records show that plaintiff was seen at the University of Alabama Birmingham Hospital Emergency Room in February 1999 for heart palpations and complaints of dizziness and anxiety. UAB Family Medical Center records of March 1, 1999, also note heart palpitations and abdominal pain. She was referred to Cardiology. On March 9, 1999, results of the Holter monitor showed atrial fibrillation and atrial flutter. Other test results showed anterior mitral valve leaflet prolapse. Dr. William J. Rogers placed plaintiff on Metoprolol[6] after diagnosing her with paroxysmal atrial fibrillation[7] and flutter. Plaintiff testified that she suffers with tiredness and

---

4. The professionals at the Local Hearing Service should be considered in the same light as treating physicians since they have conducted examinations on Ms. Doss over a period of years.

5. Testing results from 1998 to 2001, which are included with the letter, show that during that three year time period her hearing had dropped 15+/decibels.

6. Metoprolol (generic name for Lopressor) is a beta blocker used primarily for the treatment of high blood pressure, angina pectoris, and heart attack. Common side effects include dizziness, shortness of breath, slow he-

artbeat, and tiredness. *Lopressor, at* http://www.healthsquare.com/newrx/lop1235 .htm (last visited February 24, 2003). A return visit to Dr. Rogers on April 7, 1999, indicated the atrial fibrillation was resolved with Metoprolol.

7. Atrial fibrillation is the most common abnormal heart rhythm. It is a very fast, uncontrolled heart rhythm caused when the upper chambers of the heart quiver instead of beating. Beta blockers are used to slow the heart rate. Atrial fibrillation can cause strokes. *What is Atrial Fibrillation?, at* http://www.aboutatrialfibrillation.com/whatisaf.html (last visited February 24, 2003).

dizziness, and she is short of breath. She must stop and rest when performing daily activities. Her complaints are consistent with contraindications of the medication. On May 12, 2000, Dr. Rogers reported her paroxysmal atrial fibrillation remained stable with use of Metoprolol. Plaintiff was also prescribed Coumadin.[8]

## C. CARPAL TUNNEL SYNDROME

Plaintiff was seen at The Kirklin Neurology Clinic October 15, 1999, with complaints of numbness and a "cold sensation" in her left arm.[9] She had a patchy pinprick loss in the upper extremity, with a positive Tinel's sign [10] at the left wrist and left elbow. Dr. Anthony P. Nicholas's impression follows: "Left carpal tunnel syndrome versus left cervical radiculopathy versus left ulnar nerve injury at the elbow."

The UAB report of electrodiagnostic study performed November 1, 1999, showed normal motor and sensory NCS in the left ulnar and median nerves except slow sensory NSV over the finger-wrist and palm-wrist segment of the left median nerve. On a return visit to Dr. Nicholas on November 5, 1999, the doctor's impression was mild left carpal tunnel syndrome to be treated with a wrist splint and increase in ibuprofen. Dr. Rogers's May 12, 2000, notes indicate that plaintiff's carpal tunnel syndrome symptoms had responded to the brace.

## D. PNEUMOTHORAX (COLLAPSED LUNG)

The notes of Dr. Nicholas of neurology at Kirklin Clinic report plaintiff's medical history showed that she had had a collapsed lung on three different occasions. Plaintiff testified that she had had a collapsed lung in 1994, 1989, and 1990, at times when she was under stress. In 1989 she was treated at Medical Center East and in 1990 at UAB. Each time a tube was inserted in her side to be connected with a machine. She still suffers from shortness of breath. About two or three times a year her "lungs will pull loose" but not collapse completely. She experiences severe pain in her chest at those times.

## II. ALJ'S DECISION

From the above stated facts the ALJ found that Ms. Doss has bilateral sensorineural hearing loss and mild carpal tunnel syndrome. While he determined that these impairments cause significant vocationally relevant limitations she had no impairment that met the criteria of any listed impairments. He found her testimony was not entirely credible, there being no objective evidence to "confirm significant or debilitating problems from mild carpal tunnel syndrome or her hearing loss." Her atrial fibrillation was controlled by medication and was last reported stable. He found no medical evidence documenting side effects from her medications. He found that she is able to return to her past relevant work as a file clerk based on the RFC completed [11] by Gloria Roque, Ph.D.[12] on November 9, 2000.

**8.** Coumadin is used in patients with atrial fibrillation to reduce the risk of strokes. It may cause dizziness. *Physicians' Desk Reference,* (Medical Economics Company, Inc., Inc. 56rd ed. 2002). [hereinafter PDR].

**9.** The "Clinic Note" states that plaintiff's left lung had collapsed two times and that her right lung had collapsed once. Current medication was Metoprolol and Coumadin.

**10.** Tinel's sign is a tingling sensation in the distal end of a limb when percussion is made

over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve. *Dorland's Illustrated Medical Dictionary* (W.B. Sanders Company 28th ed. 1994) [hereinafter *Dorland's* ].

**11.** "Completed" is loosely used. The only thing marked on the RFC form other than a few generalized remarks at the end of the evaluation is that plaintiff had no medically determinable impairment. Her notes indicate plaintiff has no problems with daily living due

### III. FUNCTION OF COURT

█ "The function of a reviewing court is limited to determining whether the Secretary's findings are supported by substantial evidence considering the evidence as a whole." *Mims v. Califano,* 581 F.2d 1211, 1213 (5th Cir.1978). "Substantial evidence is more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971). The court is still responsible for scrutinizing " 'the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding.' " *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th Cir.1983) (quoting *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982)). The Eleventh Circuit has gone on to state the following:

> Our limited review does not, however, mean automatic affirmance, for although we defer to both the Secretary's fact-finding and her policy judgments, we must still make certain that she has exercised reasoned decision making. To this end, we evaluate the Secretary's findings in light of the entire record, not only that evidence which supports her position.

*Owens v. Heckler,* 748 F.2d 1511 (11th Cir.1984).

█ The court must further consider whether the decision of the Commissioner contains a material error of law. In *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987), the court held:

> Despite this limited review, we scrutinize the record in its entirety to determine the reasonableness of the secretary's factual findings. *Bridges,* 815 F.2d at 624; *Arnold v. Heckler,* 732 F.2d 881, 883 (11th Cir.1984). No similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims. *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982).

Having evaluated the evidence, the court holds that the evidence does not support the decision denying disability benefits. Improper legal standards were applied. Plaintiff carried her burden of proof by uncontradicted evidence.

### IV. CONCLUSION

█ Plaintiff's latest hearing test showed a 15 decibel +/hearing loss in the last three years, uncontradictable proof that plaintiff's hearing was deteriorating. Because she is a trained professional in the field of audiology Ms. Poole must be considered an uncontradicted expert witness. She opined that plaintiff's "hearing has fallen to such a level as to make adequate communication with amplification questionable." *See U.S. v. 0.161 Acres of Land in Birmingham, Alabama,* 837 F.2d 1036, 1040–41 (11th Cir.1988) in which the court held that where an expert's testimony has a reasonable factual basis (hearing test results in the instant case) it should not be excluded. "Rather, it is for opposing counsel to inquire into the expert's factual basis." Ms. Poole's expert witness testimony [13] was not challenged and nothing in the

---

to her hearing problem. Intellect is average. Although plaintiff claims an anxiety disorder the consultant found no indication she was on medication or indication in the record that she suffers with same. Contrary to her finding of no medically determinable impairment, records do show that plaintiff has a medically

determinable hearing impairment which has progressively worsened.

**12.** Dr. Roque is a DDS psychologist.

**13.** Ms. Poole has a Master's Degree and has worked in the field of audiology testing people with hearing losses and aiding them with

 

record contradicts her testimony. This evidence produced by Local Hearing and Service by means of an opinion letter plus comparative test results showing plaintiff's hearing deterioration, at the very least, should push the ALJ's analysis to the fifth step.

Not only has Local Hearing and Service given evidence of plaintiff's deteriorating hearing loss—evidence which this court finds highly relevant, the evidence is cumulative. A year earlier Dr. Turner reported bilateral significant sensorineural hearing loss and chronic Eustachian tube dysfunction which produced adhesive changes in the right ear. At about the same time Dr. Bannon opined that plaintiff would have difficulty understanding and carrying out directions. Local Hearing and Service found plaintiff would have difficulty hearing speech in all listening situations even with adequate amplification and opined her hearing loss will present communication difficulties in most work situations.

While the ALJ failed to find plaintiff's testimony credible, he failed to take into consideration the effects of her medication, dismissing side effects with the statement that there was no medical evidence documenting any side effects from her medication. The court takes judicial notice that Metoprolol and Coumadin cause the side effects of which plaintiff complains: dizziness, tiredness, shortness of breath, etc. The fact that the Metoprolol is presently controlling plaintiff's atrial fibrillation does not mean the condition is eradicated. It is controlled with medication that produces side effects that impair plaintiff's ability to work.

The ALJ's decision is not supported by substantial evidence. The record shows without contradictions that plaintiff's dete-

riorating hearing has reached the point where she is no longer able to perform work of any kind. The combination of severe hearing loss, atrial fibrillation, carpal tunnel syndrome, and pneumothorax have disabled her. She is unable to perform her past relevant work. The decision of the Commissioner is REVERSED. Benefits run from September 21, 2001.

An order consistent with this opinion is being contemporaneously herewith.

amplification devices. Based on her knowledge and training she is well qualified to give an opinion as an expert.