Lois HUGHES, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. CIV.A. 03–G–0781–W.

United States District Court,
N.D. Alabama,
Western Division.

June 29, 2004.

cial Security Act, [hereinafter the Act], 42 U.S.C. § 405(g),[1] seeking judicial review of a final adverse decision for SSI as provided under Section 1601 of the Act, 42 U.S.C. §§ 1381 *et seq.* Application was filed protectively November 5, 1999, two months prior to her fifty-second birthday.[2] Upon denial of the claim request for a hearing before an administrative law judge [hereinafter ALJ] [Jerry C. Shirley] was granted, and a hearing was held January 17, 2001. The ALJ's decision to deny benefits was handed down March 30, 2001. Plaintiff's request for review by the Appeals Council was denied March 21, 2003. An appeal to this court followed.

Plaintiff is a 57 year old female with a tenth grade education. She alleges disability onset date of August 5, 1997. She has no past relevant work. She alleges disability due to back pain, knee pain, diabetes, hypertension, and right hand pain.

Plaintiff testified she suffers with constant pain. Her attorney was unable to elicit a credible rating of pain from claimant who insisted it was at a level of ten.[3] Knee problems and osteoarthritis in her back cause constant pain. She takes medication and applies heat. It hurts to sit, causing her to lie down a considerable length of time. She testified she is able to stand four to five minutes before the pain is unbearable. She has cramps in her

A Patrick Ray, III, R D Pitts & Associates PC, Birmingham, AL, for Lois Hughes, plaintiff.

Alice H Martin, U.S. Attorney, Edward Q Ragland, U.S. Attorney's Office, Birmingham, AL, Mary Ann Sloan, Doug Wilson, Haila Naomi Kleinman, Dennis Williams, Social Security Administration–Office of General Counsel, Atlanta, GA, for Jo Anne B Barnhart, Commissioner of Social Security Administration, defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

Plaintiff brings this action pursuant to the provisions of section 205(g) of the So-

---

1. 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for Supplemental Security Income [hereinafter SSI].

2. Plaintiff has previously been denied benefits three times. On March 9, 1995, ALJ Rafe Cloe denied benefits, but found plaintiff had the functional capacity to perform the requirements of sedentary work. Judge Cloe's decision is res judicata. Judge Shirley refers to a prior decision dated October 8, 1997, which was not appealed. Both he and plaintiff's attorney agreed that it is res judicata. A copy of the 1997 decision does not appear in the record. A copy of Judge Cloe's 1995 decision does. See discussion at 8–11.

3. Her testimony indicates she never did understand the pain scale rating. As far as she was concerned she hurt. The pain scale, a subjective measure, differs with the individual. If objective findings are present, as in the instant case, more weight should be given to the objective findings than to a subjective measurement.

**1232**

hand. She has difficulty climbing stairs and is unable to bend. She has diabetes and hypertension.

Ms. Hughes testified family members help her with housework and activities of daily living. She watches television, reads, and lies down a good deal of the time. When someone takes her to the grocery store she has to ride a scooter to get around in the store. She occasionally washes dishes by hand.[4] She goes to church about once a month. Church at-

tendance is limited because she is unable to sit.

The record indicates plaintiff has been prescribed the following medications:

Naproxen 500 milligrams, twice a day;[5]

Nabumetone, 500 milligrams, twice a day:[6]

Hydrochlorothiazide, 25 milligrams, once a day;[7]

Cyclobenzaprine (Flexeril), 10 milligrams, three times a day.[8]

Reserpine, .25 milligrams, once a day;[9]

Ultram, 50 milligrams, six times a day.[10][11]

---

4. The ALJ indicated grocery shopping and washing dishes indicated plaintiff was not disabled.

5. Naprosyn is a nonsteroidal anti-inflammatory drug used to relieve the inflammation, swelling, stiffness, and joint pain associated with rheumatoid arthritis, juvenile arthritis, ankylosing spondylitis, tendinitis, bursitis, and acute gout. It is also used to relieve menstrual cramps and other types of mild to moderate pain. Ulcers and internal bleeding can occur without warning from use of this drug. Common side effects may include abdominal pain, bruising, constipation, difficult or labored breathing, dizziness, drowsiness, headache, heartburn, itching, nausea, ringing in ears, skin eruptions, and swelling due to fluid retention. *Naprosyn, available at* http://www.healthsquare.com/newrx/nap1283.HTM (last visited May 20, 2004).

6. Nabumetone (Relefen) is a member of the non-steroidal anti-inflammatory drug (NSAID) family. It reduces inflammation, pain, and temperature and is used to treat osteoarthritis and rheumatoid arthritis. *Nabumetone, available at* http://www.vitacost.com/sciencehn/Drug?Nabumetone.htm (Visited June 22, 2004).

7. Hydrochlorothiazide is used to treat hypertension (high blood pressure) and fluid retention caused by various conditions: heart disease; diabetes insipidus; certain electrolyte disturbances; and is used to prevent kidney stones in patients with high levels of calcium in their blood. *Hydrochlorothiazide, available at* http://www.drugdigest.org/DD/DVH/Uses/o,315,325@Hydrochlorothiazide, 00.html (visited June 22, 2004).

8. Flexeril is indicated as an adjunct to rest and physical therapy for relief of muscle spasm associated with acute painful musculoskeletal conditions. Improvement is manifested by relief of muscle spasm and its associated signs and symptoms, namely, pain, tenderness, limitation of motion, and restriction in activities of daily living. Flexeril may impair mental and/or physical abilities required for performance of hazardous tasks. Flexeril may enhance the effects of alcohol, barbiturates, and other CNS depressants. The most frequently reported adverse reactions are drowsiness, dry mouth, and dizziness. *Physicians' Desk Reference*, (Medical Economics Company, Inc., Inc. 56rd ed 2002) [hereinafter PDR].

9. Reserpine is an alkaloid derived from Rauwolfia Vomitoria Root Bark. The purified alkaloid, isolated in 1952, is considered the first modern drug for the treatment of hypertension. *Reserpine, available at* http://www.indoworld.com/reserpine/reserpine.htm (visited June 22, 2004).

10. Ultram, a centrally acting analgesic, is used for pain relief for moderate to moderately severe pain. Seizures have been reported in patients taking Ultram. It can cause malaise to the body as a whole. It can cause anxiety, confusion, coordination disturbance, nervousness, and sleep disorder. It can cause urinary frequency and retention. It can cause depression. *Physicians' Desk Reference,* (Medical Economics Company, Inc., Inc. 56rd ed 2002). [hereinafter PDR].

11. ALJ Shirley commented that plaintiff had not been prescribed any pain medication, indicating her pain is no more than moderate:

Objective findings, indicative of pain, are indicated by the testimony of plaintiff's treating and evaluating doctors. Dr. Neil Moss of Pickens County Medical Center interpreted an August 10, 1999, x-ray of the lumbar spine ordered by treating physician James H. Gentry, Sr. Moss's findings follow:

FINDINGS: Severe and diffuse osteopenia [12] is present most likely due to osteoporosis without acute abnormality. Calcifications are present at the L3–4 and L4–5 space on the left most likely due to

pheboliths with differential diagnosis of ureteral calculi.[13] Dr. Moss's right elbow x-ray interpretation of June 10, 1999, showed previous surgical resection of the radial head without other significant or acute finding. An x-ray of the right foot the same day showed no evidence of stress fracture. On the September 9, 1999, interpretation of an MRI of the lumbar spine, the doctor's impression reads: 1) no acute abnormality or evidence of disk herniation or spinal stenosis or metastatic disease and 2) mild to moderate and bilateral degenerative facet disease at L5–S1.

The above tests were ordered by Dr. Gentry. His records show that back as far as June 15, 1999, plaintiff was complaining of back pain and pain in general." "I hurt all over today." She had pain upon awakening and after sitting for long periods.

"The record does not indicate the claimant suffers from a level of pain that is not controlled by non-prescription medications." The above listing of medications shows that his statement is error on both counts.

12. Osteopenia refers to decreased calcification or density of bone. Having osteopenia places a person at risk for developing osteoporosis, a more serious condition that causes bones to become brittle and possibly break. Kelly Shannon, M.D., *Osteopenia*, at http://www.ivilliagehealth.com/experts/women/qas/O,,169080_125223,00.html?arrivalSA (June 22, 2004).

The doctor's notes of September 8, 1999, indicate back pain with radiculopathy. She hurt to walk and get up. Notes of September 14, 1999, indicate plaintiff was still having pain that "comes and goes." Dr. Gentry's January 14, 2000, notes indicate low back pain and pain with movement. Claimant continued having difficulty getting out of a chair. The doctor reviewed an old MRI [14] and prescribed Flexeril, Ibuprofen, and Dolgic.[15]

Dr. Cedric L. Harris, performed a consultative examination on behalf of Disability Determination. The evaluation was received February 14, 2000. A review of systems was positive for right lower back and right knee pain. Examination of lumbosacral spine revealed pain with forward flexion of dorsal lumbar spine at approximately 75 degrees. There was paraspinal and paravertebral muscle tenderness to palpation at L1–5. There was crepitous of the knee appreciated with flexion and extension of right knee pain with heel and toe walking. The doctor's impressions and physical findings follow:

*IMPRESSIONS:*

1. Lower back pain with paraspinal muscle tenderness between L1 and L5, consistent with lower back strain, as well as osteoarthritis of her lumbosacral spine.

13. An August 9, 1999, x-ray interpretation has the exact wording.

14. The results from that MRI do not appear in the record.

15. Dolgic is a combination of acetaminophen and butalbital (oral). Acetaminophen is a pain reliever and fever reducer. Butalbital us a class of drugs called barbitrates that slow down your central nervous system (brain and nervous impulses) causing relaxation. *Dolgic, available at* http://www.drugs.com/MTM/D/Dolgic.html (visited June 23, 2004).

2. Right knee pain, status post meniscal tear × 2 and orthoscopy × 1, consistent with osteoarthritis of her right knee.

*PHYSICAL FINDINGS*

Based on the medical findings, it is my opinion, claimant's impairments impose some limitations on his (sic) ability to do work-related physical activities, such as sitting for prolonged periods, standing for prolonged periods, walking significant distances, lifting, carrying and handling objects.[16]

Nothing appears in the record indicating plaintiff has improved from the time Judge Cloe decided plaintiff was capable of performing sedentary work. The above-related facts are additional to those on which ALJ Cloe based his decision. Plaintiff has engaged in no gainful activity. There is no evidence of medical improvement. *See* 20 CFR § 404.1594(f) *Evaluation steps.* While the Eleventh Circuit has not spoken to the issue of administrative res judicata in circumstances such as those in the case at bar the Sixth Circuit, in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir.1997), held that the doctrine of res judicata bound the Commissioner by prior determination regarding plaintiff's condition with regard to her subsequent benefits application.[17] Ms. Drummond argued that the first ALJ's determination that she was limited to sedentary work must be followed by the second based on the principles of res judicata. Portions of the *Drummond* decision follow:

Res judicata applies in an administrative law context following a trial type hearing. *See 2 Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 13.3* (3d ed. 1994) ("When an agency conducts a trial-type hearing, makes findings, and applies the law, the reasons for treating its decision as res judicata are the same as the reasons for applying res judicata to a decision of a court that has used the same procedure.") In the instant case, the first hearing before the ALJ was a trial-type hearing. A hearing before a social security ALJ is similar to a judicial trial but differs because the Commissioner is not represented and the claimant is rarely represented by counsel. However, an ALJ hearing approximates a judicial trial in one important aspect: it serves as an adjudication of whether a claimant is entitled to social security benefits. The ALJ hearing resolves a disputed fact-whether a particular claimant is entitled to social security benefits. The claimant has the opportunity to present evidence

---

16. The doctor's findings preclude plaintiff's performing "light" work. *See,* TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK—THE MEDICAL VOCATIONAL RULES OF APPENDIX 2, Sections 223(d)(2)(A) and 1614(a)(3)(B) of the Social Security Act and pertinent Regulations found in No. 4, Subpart P. and Appendix 2 and Regulations No. 16, Subpart I. SSR 83–10, set forth, in part, below:

2. *Light work.* The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work....

*"Frequent"* means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.

17. Grace Drummond, too, had filed multiple applications.

in support of his or her claim that he or she deserves social security benefits.

A decision concerning a claimant's eligibility for social security benefits is an "initial determination" under social security regulations. 20 C.F.R. § 404.902. An initial determination is binding unless the claimant requests reconsideration or the Commissioner revises its decision. 20 C.F.R. § 404.905. An initial determination is subject to the doctrine of administrative res judicata. *See Draper v. Sullivan,* 899 F.2d 1127, 1130 (11th Cir.1990) (rejecting the Commissioner's argument that res judicata did not apply because the Social Security Administration was not acting in a judicial capacity and the parties did not have an opportunity to litigate the issues).[18]

Section 405(h) is intended to give finality to the decision of the Social Security Administration. Decisions made by the Administration cannot be repeatedly reconsidered. In *Lively v. Secretary of Health & Human Servs.,* 820 F.2d 1391 (4th Cir.1987), the Fourth Circuit found that administrative res judicata applied against the Commissioner based on facts similar to those in the case at bar. In *Lively,* plaintiff Joseph Lively applied for disability benefits and was denied benefits because it was determined that he retained the RFC to perform work at a light exertional level. *Id.* at 1391. Following evaluation by an ALJ and an appeal to the Appeals Council, the decision to deny benefits was affirmed and became a final decision. Several weeks after the final decision Lively turned 55 years of age which qualified him as an individual of "advanced age" under the regulations. *Id.* at 1392 (citing 20 C.F.R. § 404.1563(d)). An individual of advanced age with Lively's work limitations would be entitled to benefits. Lively then filed a second application for benefits. *Id.* His claims were denied initially and following a second hearing before an ALJ, the ALJ found that Lively was able to perform work at the medium exertional level. *Id.*

*Drummond,* at 841–42.

The Fourth Circuit found the Commissioner was bound by the finding of the first ALJ and that the record was devoid of evidence that Lively had improved within the span of two weeks.[19] Following precedents set the *Drummond* court found that absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ. The court rejected the Commissioner's contention that the Administration has the unfettered discretion to revisit issues previously determined absent new and additional evidence. The court opined that to allow the Commissioner such freedom would contravene the reasoning behind 42 U.S.C. § 405(h) which requires finality in the decisions of Social Security claimants. The court found, as in the case at bar, that rather than an improvement Drummond's condition actually worsened and ruled accordingly:

> It is apparent that substantial evidence was not introduced that Drummond's condition improved significantly between the two hearing dates. As a result, we conclude that the second ALJ was bound by the determination that Drummond retained the RFC for sedentary work. Due to Drummond's change in age, at the time of her second application she was 50 years old which is classified as a

---

**18.** *Draper* was a reduction in benefits case. The court held that the doctrine of administrative res judicata precluded recalculation of claimant's disability entitlement after claimant received lump-sum workers' compensa-

tion settlement in lieu of continued receipt of weekly payments.

**19.** The instant record is devoid of evidence that Ms. Hughes has improved since ALJ's Cloe's decision.

"person approaching advanced age," 20 C.F.R. § 404.1563(c), and with a RFC for sedentary work, she is entitled to DIB benefits under the Commissioner's regulations.

See § 404.1563 **Your age as a vocational factor.** Under present regulations section (a) provides that age is a major determining factor in finding whether or not a claimant is disabled. Section (d) defines a person falling within 50–54[20] as a person "closely approaching advanced age." The Administration considers age along with a serious impairment(s) and limited work experience may seriously affect the ability to adjust to other work. Section (e) defines a person of "advanced age" as 55 or older whose age significantly affects his ability to adjust to other work.[21]

■ "The function of a reviewing court is limited to determining whether the Secretary's findings are supported by substantial evidence considering the evidence as a whole." *Mims v. Califano,* 581 F.2d 1211, 1213 (5th Cir.1978). "Substantial evidence is more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971). The court is still responsible for scrutinizing " 'the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding.' " *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th Cir.1983) (quoting *Walden v. Schweiker,*

672 F.2d 835, 838 (11th Cir.1982)). The Eleventh Circuit has gone on to state the following:

Our limited review does not, however, mean automatic affirmance, for although we defer to both the Secretary's fact-finding and her policy judgments, we must still make certain that she has exercised reasoned decision making. To this end, we evaluate the Secretary's findings in light of the entire record, not only that evidence which supports her position.

*Owens v. Heckler,* 748 F.2d 1511 (11th Cir.1984).

■ The court must further consider whether the decision of the Commissioner contains a material error of law. In *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987), the court held:

Despite this limited review, we scrutinize the record in its entirety to determine the reasonableness of the secretary's factual findings. *Bridges,* 815 F.2d at 624; *Arnold v. Heckler,* 732 F.2d 881, 883 (11th Cir.1984). No similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims. *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982).

■ Having evaluated the evidence, the court holds that substantial evidence does not support the decision denying disability benefits. Improper legal standards were applied. The ALJ failed to follow the pain standard set by the Eleventh Circuit.[22] The ALJ failed to give proper

---

**20.** At the time of the hearing and ALJ's decision plaintiff was 54 years old—"approaching advanced age." She had no work experience. ALJ Shirley found she had an impairment or combination of impairments considered "severe."

**21.** At the time the Appeals Council denied review plaintiff was days short of being 56 years old.

**22.** Whenever a claimant asserts disability through testimony of pain or other subjective symptoms, the Eleventh Circuit standard requires:

weight to the opinions of plaintiff's treating physicians.[23] The ALJ failed to apply the medical Vocational Guidelines. After stating for the record that res judicata applied, ALJ Shirley failed to follow the holding of ALJ Cloe that plaintiff was only able to perform sedentary work. As a person of "advanced age" or "closely approaching advanced age" with no substantial improvement in her medical condition, and with a RFC of sedentary work, plaintiff is disabled.

1. evidence of an underlying medical condition and either
2. objective medical evidence confirming the severity of the alleged pain arising from that condition or
3. that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). *See also Elam v. Railroad Retirement Board*, 921 F.2d 1210, 1215 (11th Cir. 1991); *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir.1988); *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir.1985).

More recently, in *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir.2002), the court announced the pain standard as follows:

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

In *Brown v. Sullivan*, 921 F.2d 1233 (11th Cir.1991), the court said:

The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987); *MacGregor*, 786 F.2d at 1054; *Landry*, 782 F.2d at [1551] 1552 [(11th Cir.1986)]. If the Secretary decides not to credit such testimony, he must discredit it explicitly, *MacGregor* at 1054, and articulate explicit and adequate reasons for doing so. *Hale*, 831 F.2d at 1011. Failure to articulate the reasons for

The court HOLDS that the opinion of the Commissioner is REVERSED. In reaching this decision the court ADOPTS the holding of *Drummond:* "Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."

An order consistent with this opinion is being entered contemporaneously herewith.

discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988); *Hale*, at 1011; *MacGregor*, at 1054.

*Brown v. Sullivan*, 921 F.2d at 1236. As in *Brown*, Ms. Hughes's subjective testimony in the present case is well supported by objective medical evidence (MRI, x-rays, tenderness, reduced ROM) of underlying conditions which could reasonably be expected to produce her pain. The medical evidence establishes that claimant's pain testimony is credible as evidenced by examination of treating physicians and medication they prescribed. *See* opinion at 1232 and 1233–34. She has suffered and continues to suffer with pain. The ALJ's failure to articulate explicit and adequate reasons for rejecting this testimony requires that it be accepted as true. *Brown v. Sullivan*, 921 F.2d at 1236 (citing *Hale v. Bowen*, 831 F.2d at 1011).

23. While the opinions of physicians are not determinative of the issue of disability, 20 C.F.R. § 404.1526 (1995), the law is clear that the ALJ must give substantial weight "to the opinion, diagnosis, and medical evidence of the claimant's treating physician." *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir.1982); *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir. 1981). The Eleventh Circuit has gone further to hold that where the Secretary ignores or fails to properly refute a treating physician's report, the findings in that report are to be accepted as true as a matter of law. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Secretary must give "explicit and adequate reasons for rejecting the opinion of the treating physician." *Elam v. Railroad Retirement Board*, 921 F.2d 1210, 1215 (11th Cir.1991).

*FINAL ORDER*

In conformity with and pursuant to the memorandum opinion entered contemporaneously, it is

ORDERED, ADJUDGED and DE-CREED that the decision of the Commissioner of Social Security be and it hereby is REVERSED, and the case is RE-MANDED to the Commissioner with instructions that the plaintiff be granted the benefits claimed.