**Annette F. ARNOLD,**
**Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of**
**Health and Human Services,**
**Defendant-Appellee.**

No. 83–8000.

United States Court of Appeals,
Eleventh Circuit.

May 21, 1984.

Bruce K. Billman, Macon, Ga., for plaintiff-appellant.

Frank Butler, Paula L. Kocher, Atlanta, Ga., for defendant-appellee.

Before RONEY and HENDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

Annette F. Arnold appeals from the denial by the Secretary of Health and Human Services of her application for disability insurance benefits under Sections 216 and 223 of the Social Security Act, as amended, 42 U.S.C. §§ 416 and 423 (1976). After a hearing, an administrative law judge denied the application on the ground that Arnold was not disabled within the meaning of the Act. This denial was approved by the Appeals Council, thereby making it the final decision of the Secretary. The district court affirmed. Arnold challenges the findings of the administrative law judge as not being supported by substantial evidence, and further urges that an erroneous legal standard was followed in rejecting Arnold's subjective complaints of pain. Finding no reversible error, and finding the Secretary's decision to be supported by substantial evidence, we affirm.

At the time of the hearing Arnold was thirty-seven years old. She is married and her husband's gross income is approximately $65,000.00 per year. After completing high school she began working as a hairdresser and continued in this line until March of 1979 when she underwent surgery to repair an injury to her shoulder. She has not worked since that time.

Arnold started having headaches in 1967. She was hospitalized in 1977 because of a headache that persisted for seven weeks. She continued to work, however, until 1979 when she stopped because the frequency of her headaches increased from one to two or three times a week and lasted from two to seven days. When these episodes occur she testified that she has to stay in bed with the drapes closed. She becomes nervous, suffers memory lapse, nausea, blurred vision, insomnia, blackout spells, and has a loss of feeling in her hands and feet. She engages in no social activity and does no housework. During remission she is limited to walking the dog and knitting. She feels that she is getting worse but if she is awarded the benefits that she seeks it would help relieve the tension she is under because she has so many medical bills.

The medical evidence indicates that after one week in the Middle Georgia Hospital she was discharged on October 4, 1977 with a diagnosis of probable vascular headache, severe and prolonged. An EMI scan showed no intracranial lesion. She spent five days in the Medical Center of Central Georgia for psychiatric examination and was discharged on November 2, 1979, with a diagnosis of cognitive function intact, depressive neurosis, moderately severe, and headache.

On November 20, 1979 her psychiatrist noted that since leaving the hospital Arnold remained quite active and helped her husband buy a new truck. "She is not really troubled by depression although some insominia and headache continue on occasion." On December 20, 1979 the doctor noted that she related well and was in good spirits, and on January 27, 1980 he further noted that she was "feeling a bit better now," and observed that she is "a bit histrionic, but relates fairly well." On February 21, 1980 he noted that she was "rather histrionic, not overly depressed or anxious and not currently complaining of a somatic problem." On March 21, 1980, he observed "Histrionics and hostility are thinly covered, not overly depressed." Finally, on April 17, 1980, the doctor noted that she was "Rather pale. Showed an attitude of

"indifference." Related somewhat histrionically."

On June 12, 1980, Arnold's neurologist wrote to the Emory University Pain Clinic seeking admission for her and stated that her headache had begun in 1966, but following an automobile accident in 1977 they increased in severity and have been unresponsive to various drugs which then required parentral medication for relief. He added that her work-up has been essentially negative. On August 11, 1980 she consulted a psychologist at the Emory Pain Control Center. He noted that she "is depressed and anxious, and displays a moderate amount of learned pain language." His assessment of her condition was, "Pain Classification 1: Pain behavior in excess of physical findings. Mixed migraine and tension headache in a dysfunctional patient impaired by actual migraine episodes and the fear of them." On December 4, 1980 the Emory Pain Control Center's Progress Report noted that upon initial assessment Arnold had a "very high level of tension in the cervical and frontalis muscles. She was able, after one session of relaxation training supplemented by biofeedback, to reduce cervical tension to within normal limits; however, frontalis tension remained high, although she was able to reduce it." Subsequently, she called the clinic and indicated that since she lived so far away from Atlanta (Macon, Georgia), she would seek the same treatment nearer her home but, if this was impossible, she would resume treatment at the clinic. She was given referrals by the Clinic but she sought no further similar treatment in Macon or at the Clinic. She received outpatient treatment on seventeen occasions at the Middle Georgia Hospital between February 12, 1980 and October 20, 1980.

The administrative law judge found that Arnold has migraine headaches without complications: that her allegations of pain are not credible to the extent alleged in light of the clinical findings of record; and that her impairments do not prevent the performance of her past relevant work as a beautician.

Arnold's argument that we reverse the final decision of the Secretary rests upon the premise that she suffers from a medically determinable condition, severe migraine headaches, for which the medical profession cannot offer clinical findings and laboratory tests to document its existence. She has produced medical findings, she argues, in the form of diagnosis of a medical condition that could reasonably be expected to produce her symptomotology—thus the administrative law judge employed an incorrect standard of law in relying on clinical findings alone to assess Arnold's credibility concerning subjective pain. We disagree with Arnold's premise and the conclusion reached because the judge did not find, as Arnold argues, that since Arnold's pain eludes precise diagnosis or the etiology cannot be established by objective medical tests or laboratory data she must be excluded from the protection offered by the Social Security disability system. The record and the judge's findings clearly show that the judge accepted the fact that Arnold suffered from migraine headaches that did, indeed, produce pain, but he did not believe her testimony that the pain is so severe that she cannot engage in substantial gainful activity. Therefore, the crucial issue in this case is Arnold's credibility.

It is well settled that "[t]he findings and decision of the Secretary are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). The reviewing court thus has a very limited role, and may not decide the facts anew or substitute its judgment for that of the Secretary." *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir.1981). (Citing *Goodley v. Harris*, 608 F.2d 234 (5th Cir.1979); *Simmons v. Harris*, 602 F.2d 1233 (5th Cir.1979)). Nevertheless, "it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Simmons*, 602 F.2d at 1236. (Citing *Williams v. Finch*, 440 F.2d 613, 615 (5th Cir.1971)).

While "symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim

for disability," the "administrative law judge may properly challenge the credibility of a claimant who asserts he is disabled by pain. In any event, the resolution of conflicting evidence is for the Secretary and the administrative law judge, rather than for this Court." *Allen*, 642 F.2d at 801 (citations omitted).

■ In this case the only issue is the quantum of pain suffered by Arnold. There is substantial evidence to support the Secretary's decision that her impairment does not result in an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." Section 223(d)(1) of the Social Security Act, 42 U.S.C. § 423(d)(1) (1976).

Using the factors in combination with each other enunciated in *De Paepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972), an analysis of the objective medical facts or clinical findings, and the diagnosis of examining physicians that we have heretofore discussed, measured in the light of the uncorroborated subjective evidence of pain of a 37-year-old, high-school educated beautician, dictates the conclusion that the quantum of pain testified to by Arnold is not credible.

Without extending this opinion unnecessarily by recounting the clinical findings and diagnosis, suffice it to say that they are all shown to be within normal limits. No doctor has opined that Arnold is disabled within the purview of the Act because of pain. On the contrary, on various examinations her psychiatrist noted that she indulged in exaggerated emotional behavior calculated for that effect. Her neurologist determined that her work-up was essentially negative. The pain clinic to which she was referred observed that she displayed a moderate amount of learned pain. Her pain was evaluated at the lowest level (Classification 1), and her pain behavior was found to be in excess of physical findings. One session of relaxation training supplemented by biofeedback reduced her cervical tension to within normal limits, and reduced her frontalis tension which, however, continued to remain high. She neither sought nor took the recommended additional treatments. Finally, Arnold evidenced no memory problems while testifying, recalling the names of doctors, dates and events with no difficulty.

Examination of the record convinces us that the administrative law judge did not ignore Arnold's evidence of subjective pain but simply determined that the quantum of pain she alleged was not credible when considered in the light of other evidence. This was clearly within his realm of judging. *See Chaney v. Califano*, 588 F.2d 958, 960 (5th Cir.1979). The failure to produce any witness at the hearing to corroborate Arnold's testimony as to the extent of subjective pain, *i.e.*, other members of the family, neighbors and others who observed her, is properly taken into account when the crucial issue to be determined is one of credibility. *See De Paepe v. Richardson*, 464 F.2d at 94.

■ It may well be that Arnold is not able to work without some pain or discomfort, but this does not necessarily satisfy the test for disability under the Act. It was not inconsistent for the administrative law judge to find that Arnold suffers pain in fact, and yet is not so severely impaired as to meet the stringent test for disability imposed by the Act. It was for the administrative law judge to determine the disabling nature of the pain.

AFFIRMED.