Lori A. MALENFANT, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. CIV.A. 03–G–1427–NE.

United States District Court,
N.D. Alabama,
Northeastern Division.

March 18, 2004.

Darryl W Hunt, Felice Ann S Goldstein, Clark & James LLC, Birmingham, AL, for Lori A Malenfant, plaintiff.

Alice H Martin, U.S. Attorney, Edward Q Ragland, U.S. Attorney's Office, Birmingham, AL, Mary Ann Sloan, William L Hogan, Social Security Administration–Office of General Counsel, Atlanta, GA, for Jo Anne B Barnhart, Commissioner of Social Security Administration, defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

Plaintiff brings this action pursuant to the provisions of section 205(g) of the Social Security Act, [hereinafter the Act], 42 U.S.C. § 405(g),[1] seeking judicial review of a final adverse decision of the Commissioner of Social Security [hereinafter Commissioner]. Application for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended, was filed November 17, 1999, as was an application for SSI as provided under Section 1601 of the Act, 42 U.S.C. §§ 1381 *et seq.* These applications were denied initially and upon reconsideration. Request for a hearing before an administrative law judge [hereinafter ALJ] [Robert L. Hodges] was granted, and a hearing was held February 26, 2001. The ALJ's partially favorable decision was handed down June 29, 2001. The ALJ granted benefits from September 10, 1999, through September 10, 2000, but denied them thereafter. Plaintiff's request for review by the Appeals Council was denied April 10, 2003. An appeal to this court followed.

Plaintiff is a 38–year–old female with a high school education. Past relevant work is as a housekeeper (unskilled work at a light exertional level) and as a nurse's aide (semi-skilled work at a medium exertional level). She also has worked as a cashier.

On September 10, 1999, while working at a convenience store plaintiff was brutally assaulted by a robber. Among other injuries she sustained Traumatic Brain Injury (extensive subacachnoid hemorrhage with focal contusions in right occipital and left frontal lobes and extensive cranial fractures). A long period of hospitalization and convalescence followed. While plaintiff has made strides she has not fully recovered from her injuries. Nothing in the record indicates she ever will.

From November 15, 1999, through March 7, 2000, plaintiff took part in an intensive physical and occupational therapy program at Health South Rehabilitation Center of North Alabama [hereinafter Health South]. She suffered a stroke from her injuries and did not speak for a long period of time. Admission to Speech Therapy at Health South November 15, 1999, followed. She was discharged from **skilled** speech therapy services March 6, 2000.

Plaintiff's treating physician Dr. Eric Beck referred plaintiff to Dr. Carol Walker, Ph.D. for a neurological evaluation. Evaluations occurred November 22, 1999;

---

1. 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for Supplemental Security Income [hereinafter SSI].

February 10, 2000; and February 23, 2000. The Wechsler Adult Intelligence Scale Revised [WAIS–R] indicated plaintiff had a Full Scale IQ of 76, a Verbal IQ of 72, and a Performance IQ of 82. The doctor opined the 10 point difference between her verbal and visual spatial problem solving abilities "likely represents a decline from her previous level of functioning when compared to both the demographically estimated value and, also, to her reading score from the Wide Range Achievement Test, which is the average range." Significant difficulty with information processing speed was reported. Verbal memory appeared to be average in some areas. Memory for complex figures was impaired. Portions of her evaluation summary follow:

The patient's performance indicates impairment of brain functions of both the left and right hemisphere. With respect to the left hemisphere, the patient demonstrates deficits in overall verbal reasoning ability and verbal problem solving ability. Evidence of impairment of the right hemisphere is also present. She has difficulty with visual problem solving. She also demonstrates difficulty with motor coordination on the left side.

The patient has significant difficulty with regard to her ability to solve problems, exercise good judgment, and learn in new and unfamiliar context. Her most significant problems appear related to frontal lobe dysfunctioning.... Her verbal fluency is impaired. She demonstrates flattened affect and poor insight into her condition. Her ability to deal with day-to-day activities in a flexible and efficient manner will be significantly impaired. She is likely to require some degree of supervision in the environment for task completion. The patient has become more functional in the home environment....

At this time, the patient does not appear to be a good candidate for returning to operating a motor vehicle or returning to gainful employment. Her ability to react to any type of emergency is likely to be poor. Her social interaction is also impaired by her language-based deficits. This is likely to result in significant difficulty with regard to return to work. (Emphasis added.) ...

Dr. Thomas A. Novak[2] of University of Alabama School of Medicine, Department of Physical Medicine and Rehabilitation, conducted a neuropsychological testing on plaintiff on August 23, 2000, less than a month prior to the time the ALJ ended plaintiff's disability status. He described her injury as "a very severe traumatic brain injury ... with signs of localized injury based on CT scan and an extended post-traumatic amnesia." He opined she was doing well with her recovery (not recovered). A pertinent part of his recommendations follows:

RECOMMENDATIONS: (1) Ms. Malenfant is not at this point capable of obtaining work on her own given the disruption of her executive skills. It is possible that with the intervention of Vocational Services she may be able to return to work with some accommodations. However, this is not a certainty and will likely take several months to fully ascertain....

In a letter written August 21, 2001, by Jan Humphries, TBI[3] Care Coordinator with the Alabama Department of Rehabilitation Services, addressed to "To whom it may concern," Ms. Humphries explained she worked with persons with traumatic

2. Ph.D.

3. Traumatic brain injury.

brain injury[4] to help them reach their vocational potential. Ms. Malenfont had made significant progress, but it had not been determined whether she was ready for further vocational evaluations. Plaintiff did not want to return to her past work and retraining would be necessary. In discussing that option Ms. Humphries said the following:

> One of the main problems we have with consumers with TBI returning to work is the retraining process. Many times they do not have the cognitive skills they need to be retrained. Due to this significant issue there are only about four to five percent of persons with traumatic brain injury that are able to return to work on a full time basis. It is not just the work skills but social[5] and physical problems that affect the potential for significant improvement in order to return to employment.

Sandy Kiplinger, Resource Coordinator[6] at the Alabama Head Injury Foundation, on August 24, 2001, reported to attorney Maureen Cooper.[7] Ms. Malenfant reported she was not always able to recognize the written word or remember what she had just read. She complained of pain and fatigue. She was unable to remember telephone messages or relay them if written down.

On November 28, 2002, Ms. Kiplinger reported again to Ms. Cooper that on September 10, 2002, she had learned plaintiff was performing light housekeeping tasks for her grandmother Pauline Renfroe every other Wednesday. Kiplinger contacted Ms. Renfroe who gave permission for

her to share the information. Plaintiff worked for her grandmother for two to two and a half hours on two occasions. It was Ms. Renfroe's belief claimant would be unable to work because she "can't hold out long," was slower than normal in finishing tasks, and was forgetful. As a family member she was understanding with plaintiff, but doubted if an employer would be so understanding.

There are no vocational rehabilitation records in the court records. *But see* Jan Humphries' letter on August 28, 2001,[8] a year later than the ALJ discontinued disability status. The letter indicates plaintiff was not ready for further vocational evaluations to even determine if she had progressed to the extent that she could be trained or placed in a specific job. Nothing in the record indicates any physician or vocational rehabilitation specialist thought plaintiff could return to work.

 "The function of a reviewing court is limited to determining whether the Secretary's findings are supported by substantial evidence considering the evidence as a whole." *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir.1978). "Substantial evidence is more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971). The court is still responsible for scrutinizing " 'the record in its entirety to ascertain

---

4. Plaintiff had been in the program since March of 2000.

5. See Dr. Walker's opinion at 3–4.

6. As coordinator her job involves assisting people with TBI and their families identify and access resources within the community.

7. Ms. Kiplinger conveyed that she did not generate medical records, evaluations, etc.

8. This letter dated two months after the ALJ's decision was submitted prior to the decision of the Appeals Council.

whether substantial evidence supports each essential administrative finding.'" *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th Cir.1983) (quoting *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982)). The Eleventh Circuit has gone on to state the following:

> Our limited review does not, however, mean automatic affirmance, for although we defer to both the Secretary's fact-finding and her policy judgments, we must still make certain that she has exercised reasoned decision making. To this end, we evaluate the Secretary's findings in light of the entire record, not only that evidence which supports her position.

*Owens v. Heckler,* 748 F.2d 1511 (11th Cir.1984).

■ The court must further consider whether the decision of the Commissioner contains a material error of law. In *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987), the court held:

> Despite this limited review, we scrutinize the record in its entirety to determine the reasonableness of the secretary's factual findings. *Bridges,* 815 F.2d at 624; *Arnold v. Heckler,* 732 F.2d 881, 883 (11th Cir.1984). No similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims. *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982).

■ Having evaluated the evidence, the court holds that the evidence does not support the decision denying disability benefits. Improper legal standards were applied. With no evidence that plaintiff was able to return to work the ALJ arbitrarily set a date ending disability, ignoring the neurological evaluation of Dr. Walker that plaintiff was not a good candidate for returning to gainful employment,

the opinion of Dr. Novak that neuropsychological testing indicated plaintiff was not capable of obtaining work, and the opinion of Jan Humphries that plaintiff had not even reached the point where she was ready for vocational evaluation.

For the reasons outlined above the court holds that the opinion of the Commissioner is REVERSED. An order consistent with this opinion is being entered contemporaneously herewith,

## FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of Social Security be and it hereby is REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be granted the benefits claimed.

It is FURTHER ORDERED that the Commissioner withhold from payments which he may determine are due plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of section 206 of the Social Security Act, as amended 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fees to be allowed plaintiff's counsel for services rendered in representing the plaintiff in this cause.

It is FURTHER ORDERED that pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby GRANTED an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days sub-

sequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*