Sharon Latricia KING, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

Civ.A. No. 02–G–2555–W.

United States District Court, N.D. Alabama, Western Division.

June 1, 2004.

---

George W. Harris, George W. Harris PC, Tuscaloosa, AL, for plaintiff.

Alice H. Martin, U.S. Attorney, Edward Q. Ragland, U.S. Attorney's Office, Birmingham, AL, Mary Ann Sloan, Doug Wilson, Social Security Administration—Office of General Counsel, Atlanta, GA, for defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

Plaintiff brings this action pursuant to the provisions of section 205(g) of the Social Security Act, [hereinafter the Act], 42 U.S.C. § 405(g),[1] seeking judicial review of a final adverse decision of the Commissioner of Social Security [hereinafter Commissioner]. Application for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended, was filed January 5, 2001. These applications were denied initially. Request for a hearing before an administrative law judge [hereinafter ALJ] [Jerry W. Shirley] was granted, and a hearing was held February 5, 2002. The ALJ's decision to deny benefits was handed down March 28, 2002. Plaintiff's request for review by the Appeals Council was denied September 21, 2002. An appeal to this court followed.

Plaintiff is a 51 year old female with a high school education. Past relevant work is as a dentist's receptionist, convenience store cashier, and office manager in a grocery store. She claims disability due to pain and mental impairments.

Ms. King testified she hurts all the time every day. She is unable to work because of the pain. Her legs throb. She is unable to stand for very long—about 15 minutes. Pain prevents her from sleeping. She is unable to walk very far—maybe a block. She has to take a pain pill or sit down. She is able to sit about 30 minutes. At times the pain is so bad she is unable to get out of bed: her legs won't work. She has pain from her hips down. She rates her pain between an eight/nine on a scale of 10. On a better day she rates the pain at about a four. She is able to lift about four pounds maximum.

---

**1.** 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for Supplemental Security Income [hereinafter SSI].

Daily activities include sitting and lying down. She is unable to do any housework. She is unable to bend. Plaintiff stays in the house most of the time because of panic attacks. She goes out to visit the doctor or her parents. It hurts to ride in a car and she does not drive. She has no friends other than her family. She does not go out to visit friends. She never goes out alone and is rarely alone. Her husband helps her with her personal needs. She reads and watches television. She is no longer able to attend church.

Plaintiff testified she has been having panic attacks about 10 years for which Prozac, Buspar, Valium, and Xanax have been prescribed at different times.

Prescribed medication is Ambien.(sleep medication). She takes Propoxy (?) for pain and Infex (?), a muscle relaxer.

The record shows that plaintiff has suffered with back problems. She was treated initially by orthopedist Dr. H. Chester Boston. X-rays of the lumbar spine showed a marked narrowing at the L5–S1 vertebrae. Dr. Boston sent her to pain specialist Dr. Wesley Spruill for treatment. Dr. Spruill diagnosed low back pain, degenerative disc disease L5–S1, and bilateral lower extremity radiculopathgy. He treated her with lumbar epidural injections (3) and performed a lumbar provocative discogram L3–4, L4–5, and L5–S1 to evaluate her for spinal fusion.

In February 2001 Dr. Boston performed anterior interbody fusion at the L5–S1 vertebrae with BAK cages and autograft. Two days later plaintiff had severe nausea and vomiting. Dr. Naresh Kumar performed a paparatomy with lysis of abdominal lesions.

Although she did well following surgery she continued to report numbness in her left leg in August 2001.[2] Plaintiff testified she has never been pain free since the surgery. Dr. Boston's notes of August 6, 2001, indicate that as of that date plaintiff was having some dysesthesias (paresthesias)[3] involving the left leg.

A consultative evaluation was performed March 27, 2001, one month following surgery, by Dr. Jamal A. Halim. A musculoskeletal examination of the LS-spine showed moderate tenderness and spasm over the lumbosacral region bilaterally. Straight leg raising tested positive on the left at 30 degrees. The doctor's assessment was status-post lumbar surgery in February for degenerative disc at L5–S1 and left lumbar radiculopathy. Dr. Halim concluded his evaluation with the following comments:

**DISCUSSION:** Based on the history and physical exam I believe that the patient should be restricted to activities in the mild range[4] including sitting, standing, walking, lifting, carrying objects, bending, pushing and pulling. Travel is limited because of her low back pain. A cane is not medically necessary.

In addition to her physical problems plaintiff has mental problems, as well. Neuropsychologist John Goff performed a "CONFIDENTIAL PSYCHOLOGICAL EVALUATION." He saw plaintiff January 21, 2001, a month prior to her back surgery. Accompanying the request for the evaluation were a "substantial number

**2.** Dr. Boston had been seeing plaintiff from the time of surgery forward to this date.

**3.** Paresthesias are abnormal sensations, often described as numbness, prickling, or tingling usually along the extremities. Tingling is an indication of damage or irritation to the nerves in that area. Unlike numbness, tingling suggests the nerve is not completely dead or severed, just injured or experiencing pressure. *Numbness and tingling, available at* http://www.umm.edu/ency/article/003206.htm (visited May 25, 2004).

**4.** No definition of "mild" is provided.

of records (later supplemented)," [5] most of which dealt with her physical problems.

In the section of his report entitled "BEHAVIORAL OBSERVATIONS AND MENTAL STATUS" he noted plaintiff described the pain she was experiencing. She admitted to being depressed. The doctor opined she appeared to be quite apprehensive and anxious, being afraid of falling. Her memory was intact.

Dr. Goff made "PSYCHOMETRIC FINDINGS" based on comprehensive psychological assessment administration of multiple tests: Wechsler Abbreviated Scale of Intelligence [WASI]; Reitan–Indiana Aphasia Screening Test; Wide Range Achievement Test [WRAT–III]; Minnesota Multiphasic Personality Inventory [MMPI–2]; and informal clock drawing tasks. Portions of his findings follow:

> The clinical profile obtained is suggestive of an individual who exhibits an array of symptoms including depression, anxiety, mental turmoil and social withdrawal. She is plagued by constant worry and self-doubt. She feels inadequate to meet the ordinary demands of everyday life and becomes helplessly overwhelmed by bigger challenges. Her distress and agitation interfere with her concentration and the clarity of her thinking. She finds it difficult to focus on her thoughts and to communicate effectively. She feels estranged, frustrated and misunderstood.

> Many types of social situations including employment situations are uncomfortable for her. She may try to avoid them unless they are minimal demands and she receives much support and reassurance. Forming relationships and maintaining comfortable attachments, even with family members, presents a hardship for her. Though finding it difficult to feel accepted, trusting and affectionate she may hold onto relationships with much ambivalence. Episodes of intense distress, confusion and unusual behavior may occur periodically. These may arise in response to situational stress or develop gradually. She increasingly retreats from social interaction and turns to narrow, obsessive belief systems for guidance. She frets over the disparity between her expectations of herself and her actual progress or accomplishment. Some suicidal impulses may ensue during times of spiraling despair and dissatisfaction or when pain becomes an overriding issue.

> The patient is very depressed. Mental dullness adds to her considerable subjective feelings of depression. Persistent unhappiness and discouragement sap much of her energy, enthusiasm and initiative.

> . . .

> The modal diagnoses suggested by the MMPI–2 computer generated printout include Depressive Disorder NOS, Psychotic Disorder NOS, Anxiety Disorder NOS, Schizoaffective Disorder and Schizotypal Personality Disorder. I should note that I do not think the patient is psychotic....

In his "SUMMARY/IMPRESSIONS" the doctor noted her anxiety is probably

5. Records include those from Dr. Bassan Mushannen (treating physician who prescribed medication for patient's diagnosed anxiety) at the Hale County Hospital; a number of laboratory studies including patient's cholesterol (325); package of records from orthopaedist Dr. Boston; set of records from Dr. David Harding (treatment records for anxiety showing prescriptions for Xanax for panic attacks since before 1993—including records from psychiatrist Mohabbat); large number of records from Hale County Hospital Emergency Department; number of records from Dr. Naresh Kumar (surgeon); records from Dr. Wesley Spruill (pain management); copy of neurological evaluation performed by Dr. Halim.

related to some elements of posttraumatic stress and opined she needs treatment. When she ventures out of the house she has panic attacks which drive her back in. Plaintiff sees herself as being boxed in by her mental and physical problems. Portions of his "CONCLUSIONS" follow:

Examination of the psychometric test data yields the following conclusions and/or inferences.

. . .

3. This lady has had significant anxiety symptoms for many years. I think that is her principal psychological presentation. She is also very depressed, but I think her depression is primarily a reactive depression. . . .

4. She does have panic attacks.

5. Diagnosis:

Axis I:[6] Posttraumatic stress disorder,[7] probably late onset, moderate with panic attacks[8] Adjustment disorder with depressed mood,[9][10] moderate to severe

Axis II:[11] I think there are some dependent personality characteristics here which probably exacerbate her problems. I am not sure they exist to the point that a diagnosis is warranted.

Following his diagnosis the doctor concluded his evaluation with a comment to the effect that plaintiff's distress is "rather extreme"[12] and that her "psychological difficulties in and of themselves represent a moderately severe impairment."

 No medical evidence contradicts Dr. Goff's diagnoses or opinion. *See* 20 C.F.R. § 404.1527 **Evaluating opinion evidence.** More weight is given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a

---

6. AXIS I: Clinical disorders/Other Conditions That May be a Focus of Clinical Attention. These disorders are usually first diagnosed in infancy, childhood, or adolescence. *Diagnostic and Statistical Manual of Mental Disorders* (American Psychiatric Association 4th ed.1994) [hereinafter DSM–IV].

7. Posttraumatic stress disorder occurs when a person has been exposed to a traumatic event in which he experienced, witnessed, or was confronted with an event or events that involved actual or threatened death or serious injury, or a threat to the physical integrity of self or others **and** the person's response involved fear, helplessness, or horror. DSM–IV. Ms. King had been in an abusive marriage.

8. A panic attack involves the sudden onset of at least 4 of 13 symptoms: chest pain or discomfort; choking; dizziness, unsteady feelings, or faintness; fear of dying; fear of going crazy or of losing control; feelings of unreality, strangeness, or detachment from the environment; flushes or chills; nausea or abdominal distress; numbness or tingling sensations; palpitations or accelerated heart rate; shortness of breath; sweating; and trembling or shaking. The disorder results

from both biologic and psychologic dysfunction and pharmacotherapy and behavior therapy usually help control symptoms. *The Merck Manual of Diagnosis and Therapy* 1513–15 (Mark H. Beers and Robert Berkow, eds 17th ed.1999).

9. The essential feature of an adjustment disorder is the development of clinically emotional or behavioral symptoms in response to identifiable psychosocial stressor or stressors. An adjustment disorder with depressed mood occurs when the dominant manifestations are symptoms such as depressed mood, tearfullness, or feelings of hopelessness. DSM–IV.

10. Vocational expert Robert E. Griffin testified that if the adjustment disorder with depressed mood imposed moderate to severe restrictions the impairment would preclude all work.

11. Personality Disorders/Mental Retardation. DSM–IV.

12. Vocational expert Griffin testified that if this statement is accurate there are no jobs she could perform.

specialist." 20 C.F.R. § 404.1527(d)(5). Medical opinions supported by data such as testing are also given greater deference. 20 C.F.R. § 404.1527(d)(3). Other factors to be considered are the expert's familiarity with the Social Security's disability programs and familiarity with the complete record.[13] His opinions are consistent with the other medical evidence on record. 20 C.F.R. § 404.1527(d)(4).[14]

Dr. Goff completed a "Medical Source Statement (Mental)" assessing the degree of Ms. King's impairments in a number of work-related categories, using rating terms of "none," "mild," "moderate," "marked," and "extreme."[15] He rated her as having "marked" to "extreme" impairments in twelve out of eighteen areas.[16] He concluded the source statement by opining plaintiff's impairments can be expected to last 12 months or longer.

Based on the above the ALJ found plaintiff has underlying medical conditions, but that the record "does not support her allegations of severe and chronic pain and limitation of function to the degree that it would preclude the performance of all substantial gainful activity."[17] He opined her allegations "are inconsistent with the claimant's daily living activities including independently caring for her personal needs,[18] reading for pleasure up to two hours at a time, and watching television up to four hours at a time, visiting family."[19] He found that she is able to perform light work.

■ "The function of a reviewing court is limited to determining whether the Secretary's findings are supported by substantial evidence considering the evidence as a whole." *Mims v. Califano,* 581 F.2d 1211, 1213 (5th Cir.1978). "Substantial evidence is more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971).

---

**13.** Dr. Goff's name is very familiar to anyone reviewing many Social Security cases. Plaintiffs and the Commissioner seek his consultative help often. He appears to have the trust of the Commissioner and a large number of plaintiffs' attorneys in this field. The court has found Dr. Goff's consultative opinions are always based on thorough testing and review of the patient's history. His opinion in the case at bar is no exception.

**14.** The ALJ gave little weight to the opinion of Dr. Goff saying the restrictions he noted were "not supported by the medical evidence of record or by the claimant's alleged symptoms. He is not a treating psychologist." *See* n. 5 at 5.

**15.** Definitions of rating terms follows:
NONE: NO IMPAIRMENT IN THIS AREA
MILD: SUSPECTED IMPAIRMENT OF SLIGHT IMPORTANCE WHICH DOES NOT AFFECT ABILITY TO FUNCTION
MODERATE: AN IMPAIRMENT WHICH AFFECTS BUT DOES NOT PRECLUDE ABILITY TO FUNCTION

MARKED: AN IMPAIRMENT WHICH SERIOUSLY AFFECTS ABILITY TO FUNCTION
EXTREME: EXTREME IMPAIRMENT

**16.** Vocational expert Griffin testified that with the number of "marked" and "extreme" limitations, were Dr. Goff's evaluation found credible "it would totally disqualify that individual from doing public work." She would be unable to do "none whatsoever."

**17.** He did find that her impairments are considered "severe."

**18.** Plaintiff testified her husband helps her with her personal needs.

**19.** "The fact that a disability claimant is able to sustain a family relationship certainly does not demonstrate a capability for sustained gainful work where there are debilitating impairments present." *Hogard v. Sullivan,* 733 F.Supp. 1465, 1469 (M.D.Fla.1990).

The court is still responsible for scrutinizing " 'the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding.' " *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th Cir.1983) (quoting *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982)). The Eleventh Circuit has gone on to state the following:

> Our limited review does not, however, mean automatic affirmance, for although we defer to both the Secretary's fact-finding and her policy judgments, we must still make certain that she has exercised reasoned decision making. To this end, we evaluate the Secretary's findings in light of the entire record, not only that evidence which supports her position.

*Owens v. Heckler,* 748 F.2d 1511 (11th Cir.1984).

▮ The court must further consider whether the decision of the Commissioner contains a material error of law. In *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987), the court held:

> Despite this limited review, we scrutinize the record in its entirety to determine the reasonableness of the secretary's factual findings. *Bridges,* 815 F.2d at 624; *Arnold v. Heckler,* 732 F.2d 881, 883 (11th Cir.1984). No similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims. *Wig-*

*gins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982).

Having evaluated the evidence, the court holds that substantial evidence does not support the decision denying disability benefits. Improper legal standards were applied. 1) The ALJ failed to give proper weight to the opinion of Dr. Goff, stating he was not a treating psychologist. The ALJ ignored the fact that Dr. Goff is a highly qualified specialist (one of the reasons for deference giving in the Commissioner's regulations). He also ignored the carefully complete testing Dr. Goff did, and the complete lack of contradiction of those test results in the record. 2) The ALJ failed to follow the standards for evaluating opinion evidence set in 20 C.F.R. § 404.1527. 3) The ALJ failed to consider the entire testimony of vocational expert Dr. Robert Griffin. 4) The ALJ failed to consider all of plaintiff's impairments.[20] Plaintiff is unable to engage in any gainful activity and there is no substantial evidence otherwise.

For the reasons set forth above the court holds that the decision of the Commissioner is REVERSED. An order consistent with this opinion is being entered contemporaneously herewith.

## FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

---

**20.** It is clear that the ALJ did not consider Ms. King's physical and mental disorders in combination. Our circuit has established criteria to be followed to establish disability where both mental and physical impairments are involved. The question is whether, in light of all the evidence, it is medically demonstrable that from the operation of the mental-psychological defects on his general physical condition, it is improbable that he could obtain and hold gainful employment.

*Broussard v. Gardner,* 382 F.2d 278 (5th Cir. 1967). 42 U.S.C.A. §§ 405(g), 416(i), 423. The *Broussard* court referred to *Clinch v. Celebrezze,* 328 F.2d 778 (5th Cir.1964), in which the court set the standard for review: "determine whether there was substantial evidence to support the finding that appellant had failed to establish the existence of a medically determinable physical or mental impairment which rendered him unable to engage in any substantial gainful activity."

ORDERED, ADJUDGED and DE-CREED that the decision of the Commissioner of the Social Security Administration is hereby REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed. It is

FURTHER ORDERED that the Commissioner withhold from payments that are determined to be due the plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.

It is further ORDERED pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*