**Pamela MATTHEWS O/B/O Jonathan DIXON, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

No. CIV.A. 03–G–3041–J.

United States District Court, N.D. Alabama, Jasper Division.

Oct. 4, 2004.

---

Darryl W. Hunt, Clark & James LLC, Birmingham, AL, for Pamela Matthews, o/b/o Jonathan Dixon, plaintiff.

Alice H. Martin, U.S. Attorney, Edward Q. Ragland, U.S. Attorney's Office, Birmingham, Sherri G. James, Office of General Counsel, Atlanta, GA, for Jo Anne B. Barnhart, Commissioner of Social Security Administration, Curity Administration, defendants.

## MEMORANDUM OPINION

GUIN, District Judge.

Plaintiff Pamela Matthews O/B/O of Jonathan Dixon brings this action pursuant to the provisions of section 205(g) of the Social Security Act, [hereinafter the Act], 42 U.S.C. § 405(g),[1] seeking judicial review of a final adverse decision of the Commissioner of Social Security [hereinafter Commissioner]. Application for Child's SSI was filed August 16, 2000. This application was denied. Request for a hearing before an administrative law judge [hereinafter ALJ] [Jerry C. Shirley] was granted, and a hearing was held February 27, 2002. The ALJ's decision to deny benefits was handed down April 11, 2002. Plaintiff's request for review by the Appeals Council was denied September 12, 2003. An appeal to this court followed.

Plaintiff Jonathan Dixon, 15, was 12 at the time of the hearing. He alleged disability due to mental retardation (from birth), attention deficit hyperactivity disorder (ADHD)[2], and oppositional defiant dis-

---

**1.** 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for Supplemental Security Income [hereinafter SSI].

**2.** 314.01 Attention–Deficit/Hyperactivity Disorder, Combined Type is used if six or more symptoms of inattention and six or more symptoms of hyperactivity-impulsivity have persisted for at least six months. Most chil-

order.[3]

Plaintiff's mother testified he was enrolled in special education classes and had repeated several grades. Current grades were F"s. She received daily reports of classroom behavioral problems: disturbs class; inability to concentrate on daily work and complete it in a timely fashion; suspension from school three times during current year (twice for fighting and once for "saying bad words)."

Record evidence shows plaintiff's primary health care provider, Dr. George H. Weaver of Haskett Memorial Clinic, treated him from April 1998 through October 2000. Dr. Weaver diagnosed ADD and prescribed Ritalin.[4] In July 2001 Ms. Matthews switched treatment from Dr. Weaver to Dabbs and Highland, P.C..Jonathan was noted to have ADHD and that he was taking Ritalin. Notes from Janis Carr, P.N. P. on a February 8, 2002, visit

dren and adolescents with the disorder have the Combined Type. Inattention may be manifested in the following ways: often fails to give close attention to details or makes careless mistakes in schoolwork, work, or other activities; often has difficulty sustaining attention in tasks or play activities; often does not seem to listen when spoken to directly; often does not follow through on instructions and fails to finish schoolwork, chores, or duties in the workplace (not due to oppositional behavior or failure to understand instructions); often has difficulty organizing tasks and activities; often avoids, dislikes, or is reluctant to engage in tasks that require sustained mental effort (such as schoolwork or homework); often loses things necessary for tasks or activities (e.g., toys, school assignments, pencils, books, or tools); is often easily distracted by extraneous stimuli; and is often forgetful in daily activities. Hyperactivity-impulsivity symptoms are listed as follows: often fidgets with hands or feet or squirms in seat; often leaves seat in classroom or in other situations in which remaining seated is expected; often runs or climbs excessively in situations in which it is inappropriate (in adolescents or adults, may be limited to subjective feelings of restfulness); often has difficulty playing or engaging in leisure activities quietly; is often "on the go" or often acts as if "driven by a motor"; and often talks excessively. Impulsivity symptoms follow: often blurts out answers before questions have been completed; often has difficulty awaiting turn; and often interrupts or intrudes on others (e.g., butts into conversations and games). *Diagnostic and Statistical Manual of Mental Disorders* (American Psychiatric Association 4th ed.1994) [hereinafter DSM–IV].

3. The essential element of the Oppositional Defiant Disorder is a recurrent pattern of negativistic, defiant, disobedient, and hostile behavior toward authority figures that persists for at least six months and is characterized by the frequent occurrence of at least four of the following behaviors: losing temper, arguing with adults, actively defying or refusing to comply with the requests or rules of adults, deliberately doing things that will annoy other people, blaming others for his or her own mistakes or misbehavior, being touchy or easily annoyed by others, being angry and resentful, or being spiteful or vindictive. The behaviors must occur more frequently than is typically observed in individuals of comparable age and developmental level and must lead to significant impairment in social, academic, or occupational functioning.

Negativistic and defiant behaviors are expressed by persistent stubbornness, resistance to directions, and unwillingness to compromise, give in, or negotiate with adults or peers. Defiance may also include deliberate or persistent testing of limits, usually by ignoring orders, arguing, and failing to accept blame for misdeeds. Hostility can be directed at adults or peers and is shown by deliberately annoying others or by verbal aggression usually without the more serious physical aggression seen in Conduct Disorder. Manifestations of the disorder are almost invariably present in the home setting, but may not be evident at school or in the community. Symptoms of the disorder are typically more evident in interactions with adults or peers whom the individual knows well. Usually individuals with this disorder do not regard themselves as oppositional or defiant, but justify their behavior as a response to unreasonable demands or circumstances. DSM–IV.

4. Ritalin is a mild central nervous system stimulant. *Physicians' Desk Reference*, (Medical Economics Company, Inc., Inc. 56rd ed 2002). [hereinafter PDR].

to Dabbs and Highland indicate plaintiff's mother had reported he was doing poorly in school. Ms. Carr checked his testing results and found them to be quite low. He was repeating a grade for the third time. She noted he was really struggling at school. She changed plaintiff from Adderal (Ritalin) to Concerta because of the teacher checklists from school.

On February 15, 2002, Ms. Carr completed a "Child Development and Functioning Rating" on plaintiff in which his limitations were graded. She opined he has a "Marked"[5] limitation in acquiring and using information and a "Marked" limitation in attending and completing tasks.[6]

A February 22, 2002, "Possibility of Failure" report issued by Parrish Elementary School to his parent indicated Jonathan had the possibility of failing the school year 2001–02. On that date he was failing spelling, social studies, and science/health. He could not pass the fifth grade if he failed three subjects. A disciplinary report for the school year 2001–02 listed 18 instances of action taken due to plaintiff's misbehavior in the classroom:[7] defiance of authority; disturbs class; pushing/shoving; arguing; failure to follow instructions several times; excessive distraction; disrupting class; talking ugly; disrespectful to teacher; etc. He was suspended from school several times. His school file contains a sheet listing items that describe him. Among items listed as very true or often true are those that follow:

1) Hums or makes other odd noises in class;

2) Argues a lot;

3) Can't concentrate, can't pay attention for long;

4) Can't sit still, restless, or hyperactive;

5) Demands a lot of attention;

6) Difficulty following directions;

7) Disobedient at school;

8) Disturbs other pupils;

9) Doesn't get along with other pupils;

10) Lying or cheating; and

11) Talks out of turn.

Items listed as being "somewhat" or "sometimes true" follow:

1) Defiant, talks back to staff;

2) Fidgets;

3) Cruelty, bullying, or meanness to others;

4) Daydreams or gets lost in his thoughts;

5) Hangs around with others who get in trouble;

6) Impulsive or acts without thinking; and

7) Has difficulty learning.

At the request of Jonathan's mother, on August 30, 2000, his fourth grade teacher Regena Johnsey composed a letter addressed to "To Whom It May Concern" in which she noted some of the things she had noticed about him during the last two weeks. A paragraph of the letter follows:

---

5. A "Marked" limitation "seriously interferes with the child's ability to independently initiate, sustain, or complete activities. A marked limitation may result when an impairment (s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. Or, a standardized test score two standard deviations below the norm is a marked limitation."

6. The nurse practitioner is an expert—just not a qualified treating source.

7. The items in this list and all others in the opinion are itemized as they are stated in the reports and do not follow grammatical parallel structure.

Jonathan has a very hard time getting situated each morning. It is hard for him to get organized enough to start assignments and rarely does he complete work. He is constantly making noises and moving about. He leaves books and homework at home even though we use assignment notebooks daily. He has a hard time concentrating.

Ms. Johnsey completed a "Teacher Questionnaire" January 2, 2001, stating she had known Jonathan since August 16, 2000, and had seen him every day for 230 minutes as teacher in his fourth grade math, English, science, social studies, and health classes. She opined his cognitive functioning was not age appropriate. His cognitive functioning impairment was adjudged anywhere from a(3), "Noticeably interferes with academic or social success," to a(5), "Very serious detriment to academic or social success," in the areas of learning new material, recalling and applying previously learned material, reading and/or comprehending written material, comprehending and following oral instructions, expressing ideas in written form, and applying himself. She said he needed special help to learn successfully, writing, "Jonathan is severely attention deficit." In explaining the ratings assigned to plaintiff she wrote that Jonathan's abilities are "minimal" when he hasn't taken his medication. His abilities were below fourth grade "functioning level.'"

Plaintiff was severely handicapped in his social functioning. Again she rated his impairments ranging from "3" to "5" in severity on a "daily" basis. He had difficulty getting along with other children. He had difficulty making or keeping friends. He was aggressive and fought and provoked his peers. He was disrup- tive and talked out of turn. He defied authority and was disobedient. He had temper outbursts. He demanded attention inappropriately. He was easily frustrated. Ms. Johnsey had had to discipline Jonathan: sent to the office and suspension. He got very upset when disciplined. He broke class rules constantly. She had seen him do things to other students and then deny doing them. She noted that at times he seemed to work hard and seemed to try. She felt that he was sometimes embarrassed because he was behind.[8]

On August 28, 2000, plaintiff was referred by his third grade teacher for testing because of academic failures in most areas. He was evaluated by Psychometrist [9] Ann Wilson. On the WISC–III test administered he obtained a Verbal IQ score of 70, a Performance IQ score of 72, and a Full Scale IQ score of 69 (intellectually deficient).

A psychological evaluation was performed by Alan D. Blotcky, Ph.D. February 18, 2002. Plaintiff was 12 years old at the time of evaluation, in the fifth grade, and residing with his grandmother. The doctor's notes indicate Jonathan needed assistance with bathing and dressing. Abstract thinking was poor. Memory functioning was vague. "During this exam, Jonathan was hyperactive, fidgety, inattentive, distractible, and impulsive. I also found him to be glib, sullen, and immature." The WISC–III test was administered to Jonathan. He obtained a Verbal IQ of 59, a Performance IQ of 60, and a Full Scale IQ of 56, placing him at the lower end of the Mildly Retarded range of intellectual abilities. Results from the Copeland Symptom Checklist administered

---

8. Ms. Johnsey is an expert on school functioning and ability to adapt to a grade level. She is also an expert on behavior.

9. The psychometrist is qualified to test and determine ability.

were strongly indicative of ADHD. The doctor's diagnostic impression follows:

DIAGNOSTIC IMPRESSION

AXIS I:[10] Attention deficit hyperactivity disorder, Combined type Oppositional defiant disorder

AXIS II:[11] Mild Mental retardation

Dr. Blotcky considered Jonathan's prognosis to be "very poor." His motivation during the exam was fair to good.

Another teacher Anne Wells completed a form on Jonathan's behavior.[12] Her observations follow along the same lines as those of others outlined above. Under the category "Very Often" she checked the following:

1) Doesn't give close attention to detail or makes careless mistakes;

2) Has difficulty sustaining attention in tasks or play activity;

3) Doesn't follow through on instructions; doesn't finish schoolwork, chores, or duties;

4) Easily distracted by extraneous stimuli;

5) Fidgets with hands or feet or squirms in seat.

Under the category "Often" these items were checked:

1) Doesn't seem to listen when spoken to directly;

2) Avoids, dislikes or reluctant to engage in tasks that require sustained mental effort;

3) Loses things necessary for tasks or activities, like toys, assignments, pencils, books or tools;

4) Forgetful in daily activities;

5) Runs about or climbs excessively (feels restless)

6) Has difficulty playing or engaging in leisure activities quietly;

7) Often "on the go" or acts as if "driven by a motor;"

8) Blurts out answers before questions are completed;

9) Interrupts or intrudes on others (butts into conversations or games).

Jonathan "Occasionally" does the following:

1) Leaves seat in classroom or other situations where remaining seated is expected;

2) Talks excessively;

3) Has difficulty awaiting turn;

4) Mood changes quickly and noticeably;

5) Often loses temper;

6) Deliberately does things that annoy others

Based on the above the ALJ found that plaintiff was not disabled under Social Security definitions.

■ "The function of a reviewing court is limited to determining whether the Secretary's findings are supported by substantial evidence considering the evidence as a whole." *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir.1978). "Substantial evidence is more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richard-*

---

10. AXIS I: Clinical disorders/ Other Conditions That May be a Focus of Clinical Attention. These disorders are usually first diagnosed in infancy, childhood, or adolescence. DSM–IV.

11. Personality Disorders/Mental Retardation. DSM–IV.

12. The form is not dated and does not state her relationship to Jonathan other than "Teacher."

*son v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971). The court is still responsible for scrutinizing " 'the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding.' " *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th Cir.1983) (quoting *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982)). The Eleventh Circuit has gone on to state the following:

> Our limited review does not, however, mean automatic affirmance, for although we defer to both the Secretary's fact-finding and her policy judgments, we must still make certain that she has exercised reasoned decision making. To this end, we evaluate the Secretary's findings in light of the entire record, not only that evidence which supports her position.

*Owens v. Heckler,* 748 F.2d 1511 (11th Cir.1984).

■ The court must further consider whether the decision of the Commissioner contains a material error of law. In *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987), the court held:

> Despite this limited review, we scrutinize the record in its entirety to determine the reasonableness of the secretary's factual findings. *Bridges,* 815 F.2d at 624; *Arnold v. Heckler,* 732 F.2d 881, 883 (11th Cir.1984). No similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to

be applied in evaluating claims. *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982).

■ Having evaluated the evidence, the court holds that substantial evidence does not support the decision denying disability benefits. Improper legal standards were applied. The ALJ ignored Listing 112.05 D.[13]

The court refers to Appendix 1, Subpart P of 20 C.F.R. Pt. 404, 20 C.F.R. § 416.924(a) **Consideration in determining disability for children.** which sets forth the criteria used. Evidence may include information from medical sources, psychologist, and nonmedical sources such as parents, teachers, and others who know the claimant best. Section 416.924(a)(ii) states test scores alone will not suffice. Information from parents and caregivers can be important sources of information because they usually see the person every day. Section 416.924(a)(iii) states that information from school is considered. Teachers and school personnel know how the claimant is functioning on a day-to-day basis compared to other children of the same age who do not have impairments. Reports showing results of formal testing or describe special education instruction provided are considered.

In the case at bar standardized IQ test results on two separate occasions show plaintiff to be mentally retarded and qualified for benefits under Listing 112.05 D[13] and 112.05 C.[14] He has been placed in special education classes. Even so, he has

---

**13.** This ALJ has a long history of ignoring Listings.

**13.** Listing 112.05 D falls under section 112.05 *Mental Retardation* characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning. Section D reads as follows:

> D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or

other mental impairment imposing an additional and significant limitation of function. Plaintiff falls within this category. He has a performance IQ of 60.

**14.** Plaintiff falls with the definition of 112.05C on his Full Scale IQ of 56 ("A valid verbal, performance, or full scale IQ of 59 or less").

had to repeat grades and was in danger of failing another grade at the time of the hearing. His cognitive/communicative functioning was below normal. Evidence gleaned from school records, teachers Johnsey and Wells, parent Matthews, Psychometrist Wilson, Dr. Blotcky, nurse practitioner Carr, and test scores prove by substantial evidence that plaintiff is entitled to benefits under 112.05 D. In addition to meeting the IQ requirement of 112.05 D plaintiff has been diagnosed with ADHD and oppositional defiant disorder. All records indicate plaintiff is unable to adapt his behavior in school and social settings. His IQ deficit and inability to adapt qualify him for benefits under this Listing. The decision of the Commissioner is REVERSED.

An order consistent with this opinion is being entered contemporaneously herewith.

### FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of Social Security be and it hereby is REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be granted the benefits claimed.