**Allicyn C. WEBSTER, Plaintiff,**

v.

**Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.**

**No. CIV.A. 04–G–0098–NE.**

United States District Court,
N.D. Alabama,
Northeastern Division.

Oct. 25, 2004.

**1086**

Darryl W Hunt, Clark & James LLC, Birmingham, AL, for Allicyn C Webster, plaintiff.

Winfield J Sinclair, Alice H Martin, U.S. Attorney's Office, Birmingham, AL, William L Hogan, Social Security Administration of General Counsel, Atlanta, GA, for

Jo Anne B Barnhart, Commissioner of Social Security Administration, defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

Plaintiff brings this action pursuant to the provisions of section 205(g) of the Social Security Act, [hereinafter the Act], 42 U.S.C. § 405(g),[1] seeking judicial review of a final adverse decision of the Commissioner of Social Security [hereinafter Commissioner]. Application for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended, was filed April 19, 1999. These applications were denied initially and upon reconsideration. Request for a hearing before an administrative law judge [hereinafter ALJ] [H. Evins Hamm] was granted, and a hearing was held September 20, 2000. The ALJ's decision to deny benefits was handed down February 13, 2001. The ALJ held that plaintiff was able to perform light work.[2] Plaintiff's request for review by the Appeals Council was denied August 14, 2003. An appeal to this court followed.

Subsequent to the decision of ALJ Hamm in the case at bar plaintiff filed another application for benefits. On Feb-

---

1. 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for Supplemental Security Income [hereinafter SSI].

2. See TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK—THE MEDICAL VOCATIONAL RULES OF APPENDIX 2, Sections 223(d)(2)(A) and 1614(a)(3)(B) of the Social Security Act and pertinent Regulations found in No. 4, Subpart P. and Appendix 2 and Regulations No. 16, Subpart I. SSR 83–10, set forth, in part, below:

 b. *Light work.* The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in

a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work. . . .

 *"Frequent"* means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.

ruary 25, 2004, ALJ Robert L. Hodges issued a favorable decision finding disability dating from February 14, 2001.[3]

In his decision denying benefits ALJ Hamm found plaintiff to have severe impairments of chronic fatigue syndrome,[4] fibromyalgia,[5] lumbar disc disease, and de-

**3.** This is the day after ALJ Hamm issued his decision that plaintiff was not disabled.

**4.** In order to satisfy a diagnosis of chronic fatigue syndrome [CFS] a patient must satisfy two criteria:

 1) Have severe chronic fatigue of six months or longer duration with other known medical conditions excluded by clinical diagnosis, and

 2) Concurrently have four or more of the following symptoms: *substantial impairment in short-term memory or concentration; sore throat; tender lymph nodes; muscle pain; multi-joint pain without swelling or redness; headaches of a new type, pattern or severity; unrefreshing sleep; and post-exertional malaise lasting more than 24 hours.*

The symptoms must have persisted or recurred during six or more consecutive months of illness and must not have predated the fatigue. *Chronic Fatigue Syndrome, at* http://www.cdc.gov/ncidod/diseases/cfs/ (last reviewed June 29, 2004) (visited October 18, 2004).

The early sign of this illness is a strong and noticeable fatigue that comes on suddenly and often comes and goes or never stops. A patient suffering with CFS is sometimes too tired to do normal activities and is easily exhausted with no apparent reason. CFS steals energy and vigor over months and sometimes years. Symptoms can include headache, tender lymph nodes, fatigue and weakness, muscle and joint aches, and inability to concentrate. The causes remain essentially unknown.

The illness is called "chronic fatigue syndrome" after its primary symptom. "Syndrome" means a group of symptoms that occur together but can result from different causes. Today CFS is also known as myalgic encephalomyelitis, postviral fatigue syndrome, and chronic fatigue and immune dysfunction syndrome. Antidepressants are used to help improve sleep and relieve mild, general pain, as are medicines used to treat acute anxiety and other nervous system problems. *Chronic Fatigue Syndrome, at* http://www.niaid.nih.gov/factsheets/cfs.htm

(last updated May 10, 2004) (visited October 18, 2004).

**5.** *Fibromyalgia indicates pain in the fibrous* connective tissue components of muscles, tendons, ligaments, and other "white" connective tissues. Merck Manual of Diagnosis and Therapy (15th ed.1987). It is a widespread musculoskeletal pain and fatigue disorder for which the cause is still unknown. Fibromyalgia means pain in the muscles, ligaments and tendons—the fibrous tissues in the body. *FMS used to be called fibrositis.* The pain of fibromyalgia has no boundaries. The disease is chronic. *Overall studies have shown that* fibromyalgia can be equally disabling as rheumatoid arthritis. *Fibromyalgia Basics— Symptoms, Treatments and Research,* (Google, Fibromyalgia Network 2002).

According to Williams Hennen, Ph.D., author of "Fibromyalgia: A Nutritional Approach," fibromyalgia has been classified as a syndrome, not a disease. He explains that a disease is a condition with a clearly identifiable cause, while a syndrome is a set of symptoms that define the condition without a single causative agent upon which to place the blame. *Fibromyalgia Tenderpoints Index, at* http://www.immunesupport.com/fibromyalgia-tenderpoints.htm. (Visited May 10, 2004).

For a discussion of disabling aspects of fibromyalgia see *Glenn v. Apfel,* 102 F.Supp.2d 1252, 1258–59 (D.Kan.2000), set forth in part below:

 Proper credibility determinations are essential in cases involving subjective symptoms. Subjective symptoms must be evaluated with due consideration of credibility, motivation, and medical evidence of impairment. *Dvorak,* 345 F.2d at 897. Other factors the court considers in evaluating whether pain is disabling are attempts to find relief from pain, willingness to try treatment, regular contact with a *doctor,* and daily activities.

 . . . . .

 The reviewing court may evaluate the ALJ's decision with a skeptical eye where the claimant's subjective complaints of pain are supported by treating physicians. *Broadbent,* 698 F.2d at 414. Both treating doctors agree that plaintiff is disabled, and

pression. He also noted, but did not list as "severe," her retrohumeral radial neuropathy [6] which he expected to resolve within 12 months.[7] The ALJ did not list it as a "severe" impairment.

Ms. Webster is a 46 year old female with a high school education plus one year of college. Past relevant work is as an assembler in an automobile plant and a radio tester, work which vocational expert Barbara Azzam classified as unskilled and not transferable. Based on the hypothetical asked her Ms. Azzam opined there are jobs available plaintiff could perform.[8]

 In his decision the ALJ characterized the records of treating physician [9] Patrick J. O'Neill in the following manner:

> none of the doctors suggested that plaintiff was exaggerating her symptoms.
>
> . . . . .
>
> [T]he symptoms of fibromyalgia are subjective, pain all over, fatigue, disturbed sleep, and stiffness, and there are **no objective clinic tests to determine its severity** (emphasis added).

**6.** Radial neuropathy (wrist drop) involves the radial nerve, most frequently at the spiral groove of the humerus. It can be at the axilla (Saturday Night Palsy) or in the forearm (Posterior Interosseous Syndrome). The patient has wrist drop and is unable to extend wrist or fingers up. There is no associated pain and the condition is almost always unilateral. Occasionally forearm/hand/thumb numbness will occur. The symptoms are always present. Onset is sudden, usually upon waking up one morning from sleeping in wrong position or from leaning on arms/axilla, or from somebody leaning on arm which causes trauma. Joe F. Jabre, *Radial Neuropathy (Wrist Drop)*, at http://www.tel-eemg.com/guides/rad.htm (last updated September 23, 2004) (visited October 18, 2004).

**7.** There is nothing in the record to support his conclusion that this impairment should be resolved within 12 months. To the contrary, at the time of the decision (February 13, 2001), plaintiff had already suffered with the condition for a period exceeding 12 months, having been diagnosed by objective testing (EMG and nerve conduction studies) with "moderately severe" left retrohumeral radial neuropathy September 3, 1999.

In January 2000, Patrick O'Neill, M.D., completed a form presented to him by the state agency. Dr. O'Neill stated he had provided treatment to the claimant for three years for ongoing chronic fatigue syndrome, ongoing pyrexia (fever) of unknown origin, ongoing polyarthritis, ongoing chronic pain, and ongoing muscle pain. He also noted that the claimant's radial nerve palsy was slowly improving.[10] Dr. O'Neill noted the claimant was taking the following prescription medication: Prozac,[11] Valium,[12] Lortab, Vioxx,[13] and Allegra.[14]

**8.** See n. 15 at 8 and discussion at 17–19.

**9.** While the opinions of physicians are not determinative of the issue of disability, 20 CFR § 404.1526 (1995), the law is clear that the ALJ must give substantial weight "to the opinion, diagnosis, and medical evidence of the claimant's treating physician." *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir.1982); *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir. 1981). The Eleventh Circuit has gone further to hold that where the Secretary ignores or fails to properly refute a treating physician's report, the findings in that report are to be accepted as true as a matter of law. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Secretary must give "explicit and adequate reasons for rejecting the opinion of the treating physician." *Elam v. Railroad Retirement Board*, 921 F.2d 1210, 1215 (11th Cir.1991).

**10.** The doctor did not, however, indicate he was of the opinion the condition was short-lived or would be resolved within 12 months, as did the ALJ. See n. 7 at 6. The condition was still present at the time ALJ Hodges ruled plaintiff was disabled, indicating continuation of the condition from time of diagnosis until plaintiff was ruled disabled by ALJ Hodges.

**11.** Prozac (fluoxetine) is an selective serotonin reuptake inhibitor [SSRI] antidepressant indicated for the treatment of depression, obsessive-compulsive disorder, and bulimia nervosa. It is thought to work by bloc reabsorption of serotonin, a neurotransmitter in the

In the January 8, 2000, medical report of Dr. O'Neill in which he noted plaintiff's "radial nerve palsy"(diagnosed September 3, 1999), was *slowly* improving, he noted her "acute" pain from other impairments was "ongoing." [15] He had already opined on November 10, 1999, that plaintiff would never be able to return to her regular work and that she was "permanently disabled," placing emphasis on "disabled." [16] Dr. O'Neill ceased being plaintiff's primary treating physician in 1992.[17] The record contains a copy of a July 25, 2000, letter [18] he wrote which reads as follows:

July 25, 2000

To Whom It May Concern:

RE: Allison Webster

This lady has been off work until June 30, 2000 because of chronic pain, fibromyalgia, fibromyositis, fatigue and depression. She has been under my care on a continuous basis for the above problems until that date.

A consultative evaluation for the state agency was performed on plaintiff January 24, 2000, by Dr. John Lary. The ALJ reported his evaluation in the following manner:

Dr. Lary noted the claimant reported current diagnosis of chronic fatigue, fibromyalgia, left arm injury, and degenerative disc disease. Examination revealed that the claimant had unlimited range of motion in her neck with no evidence of spasms. Straight leg raises were normal at 50 degrees and her spinal range of motion was decreased. Neurologically, she had slight overall decreased muscle strength. Dr. Lary diagnosed chronic fatigue, fibromyalgia, lumbar disc disease, and retrohumeral radial neuropathy producing a left wrist drop with good prognosis for recovery. Dr. Lary opined that the claimant's abil-

brain. *Anti–Depressants Online, available at,* http:// www.anti-depressants-paxil-prozac-zoloft-celexa-medications.com/prozac.html (last visited November 5, 2003).

12. Valium/Diazepam is indicated for the management of anxiety disorders or for the short-term relief of the symptoms of anxiety. Valium is a useful adjunct for the relief of skeletal muscle spasm due to reflex spasm to local pathology (such as inflammation of the muscles or joints, or secondary to trauma). Side effects most commonly reported are drowsiness, fatigue and ataxia. Infrequently encountered side effects are confusion, constipation, depression, diplopia, dysarthria, headache, hypotension, incontinence, jaundice, changes in libido, nausea, changes in salivation, skin rash, slurred speech, tremor, urinary retention, vertigo and blurred vision. *Physicians' Desk Reference,* (Medical Economics Company, Inc., Inc. 56rd ed 2002). [hereinafter PDR].

13. Vioxx is a nonsteroidal anti-inflammatory drug that exhibits anti-inflammatory, analgesic, and antipryetic activities. It significantly reduces joint pain. Vioxx is indicated for the relief of the signs and symptoms of osteoarthritis, and for the management of acute pain in adults. PDR.

14. Allergy medication. PDR.

15. The ALJ chose to describe plaintiff's pain as "moderate" when posing his hypothetical to the vocational expert. *See Boyd v. Apfel,* 239 F.3d 698, 707 (5th Cir.2001) (If the hypothetical is defective due to the ALJ's failure to accurately portray a claimant's physical and mental impairments, a determination of non-disability based on the vocational expert's answer to a defective question is not supported by substantial evidence and cannot stand.).

16. Dr. McNeil underlined the word.

17. Dr. Anita Eason–Jones became her primary treating physician.

18. The court assumes this letter was written for the purpose of continuation of receipt by plaintiff of private long-term disability payments received on a policy through her union UAW legal services.

ity to stand, walk, lift, carry, climb, reach, squat, and sit may be affected by her impairments. Her ability to see, hear, speak, and understand are unimpaired.

Missing from his summary of the doctor's evaluation, however, is the last sentence of Dr. Lary's discussion paragraph from which the above excerpted material is taken: "Her ability to lift, carry, and manipulate small objects is impaired by her wrist drop." [19]

The ALJ also relied on the opinions of other non-examining medical personnel employed by the state agency: Dr. Stonecypher (opinion rendered August 26, 1999, before the diagnosis of retrohumeral radial neuropathy was on record); Dr. R.D. Carter (opinion rendered February 8, 2000, immediately following Dr. Lary's October 21, 2004 consultative examination); Dr. D.W. Leonard (August 2, 1999, psychiatric review diagnosis of affective disorder); Dr. Kennetta Warner (August 8, 2000, psychiatric review diagnosis of affective disorder). The reports of Leonard and Warner do not deal with plaintiff's physical impairments. Neither report of doctors Lary or Carter contains manipulative limitations relating to upper extremities. Both reports are thus underinclusive. They fail to encompass all limitations of record as required. *See Foote v. Chater,* 67 F.3d 1553 (11th Cir., 1995); *Walker v. Bowen,* 826 F.2d 996, 1002–03 (11th Cir.1987) (quoting *Francis v. Heckler,* 749 F.2d 1562, 1566 (11th Cir.1985)). See also 20 CFR § 416.945(b).

As indicated above in n. 17 at 9 Dr. Eason–Jones of Madison, Alabama, became plaintiff's treating physician following treatment by Dr. O'Neill. The ALJ's remarks about Dr. Eason–Jones follow:

On September 15, 2000, Dr. Anita Eason–Jones noted that she had examined the claimant upon referral to a pain management center. Dr. Eason–Jones noted the claimant reported a recent onset of intractable persistent headaches and chronic fatigue syndrome. Dr. Eason–Jones prescribed facet injections for the headaches and stated they should be resolved within a few weeks. In regard to the chronic fatigue syndrome, Dr. Eason–Jones opined that the claimant could not return to her past assembly work, but with treatment should be able to return to some other form of employment within a few months.[20] Test results were further indicative of diffuse hyperthyroidism.

Contrary to the ALJ's remarks set forth above, Dr. Eason–Jones referred plaintiff to Dr. K. Dean Willis of Alabama Pain Center in Huntsville, Alabama, in regard to treatment for chronic intractable headache and chronic fatigue syndrome. It was Dr. Willis, in a September 15, 2000, letter to Dr. Eason–Jones, who made the remarks the ALJ attributed to Dr. Eason–Jones (with a notable exception pointed out later in this opinion). Dr. Willis verified plaintiff's recent lumbar spine surgery and her diagnoses of fibromyalgia and chronic fatigue syndrome. He noted plaintiff's recent application for disability. He agreed her past work was "not appropriate for her now or in the future." Rather than saying plaintiff *should* be able to return to work, as reported by the ALJ, Dr. Willis's remarks follow:

> *Hopefully,* we will be able to see substantial improvement in function to allow her to return to some other form of

---

19. See n. 6 at 6.

20. The court has been unable to find any place in the record verifying this statement.

employment over the next few months (emphasis added).[21]

The doctor's letter further outlines what he proposed to do in an effort to alleviate plaintiff's pain from many sources. Toward the end of the letter the following summation appears:

> I appreciate the opportunity of working with Ms. Webster and although it will be quite complicated attempting to resolve several distinct and separate chronic pain difficulties as well as the underlying psychological effect it has had on her overall quality of life, our multidisciplinary approach is geared to do just that. She is well aware that this will be a process that will occur over the next 12 weeks minimally but, hopefully, during that period of time we will see substantial improvement in her pain, sleep and overall psychological demeanor. At that point, we will be able to determine to what degree we have been successful with Ms. Webster.

Nothing further from Dr. Willis is included in the record.

Plaintiff has testified she has chronic severe pain. Dr. O'Neill has opined she has "acute" pain. The ALJ has found plaintiff has CFS, fibromyalgia,[22] and lumbar disc disease, all of which carry symptoms of disabling pain.[23] Dr. Eason–Jones has referred plaintiff to Dr. Willis of Alabama Pain Center for treatment of pain. Dr. Willis has prescribed Vicoprofen (hydrocodone bitartrate and ibuprofen) for pain.[24] Whenever a claimant asserts disability through testimony of pain or other subjective symptoms, the Eleventh Circuit standard requires:

1) evidence of an underlying medical condition and either

2) objective medical evidence confirming the severity of the alleged pain arising from that condition or

3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain.

*Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991). See also *Elam v. Railroad Retirement Board,* 921 F.2d 1210, 1215 (11th Cir.1991); *Lamb v. Bowen,* 847 F.2d 698, 702 (11th Cir.1988); *Hand v. Heckler,* 761 F.2d 1545, 1548 (11th Cir.1985).

More recently, in *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir.2002), the court announced the pain standard as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

■ In *Brown v. Sullivan,* 921 F.2d 1233 (11th Cir.1991), the court said:

> The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor,* 786 F.2d at 1054; *Landry,* 782 F.2d at 1552. If the Secretary decides not to credit such testimo-

---

**21.** He did not say she **would** be able to return to work. He **hoped** she would be able to return to work—a big difference.

**22.** See n. 5 at 4–5. There are no objective clinical tests to determine its severity.

**23.** See n. 4–5 at 3–5.

**24.** She was also taking Prozac, Relefen and Zanaflex.

ny, he must discredit it explicitly, *MacGregor* at 1054, and articulate explicit and adequate reasons for doing so. *Hale,* 831 F.2d at 1011. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen,* 858 F.2d 1541, 1545 (11th Cir.1988); *Hale,* at 1011; *MacGregor,* at 1054.

*Brown v. Sullivan,* 921 F.2d at 1236. As in *Brown,* Ms. Webster's testimony is supported by medical evidence (there are no objective tests for fibromyalgia) and her underlying conditions can reasonably be expected to produce her pain. Nothing in the record discredits her pain testimony, but substantiates conditions to cause pain and add credence to her complaints (as does Hodges's decision). Absent discrediting evidence plaintiff's pain testimony stands as a matter of law.

█ "The function of a reviewing court is limited to determining whether the Secretary's findings are supported by substantial evidence considering the evidence as a whole." *Mims v. Califano,* 581 F.2d 1211, 1213 (5th Cir.1978). "Substantial evidence is more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971). The court is still responsible for scrutinizing " 'the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding.' " *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th Cir.1983) (quoting *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982)). The Eleventh Circuit has gone on to state the following:

> Our limited review does not, however, mean automatic affirmance, for although we defer to both the Secretary's factfinding and her policy judgments, we must still make certain that she has exercised reasoned decision making. To this end, we evaluate the Secretary's findings in light of the entire record, not only that evidence which supports her position.

*Owens v. Heckler,* 748 F.2d 1511 (11th Cir.1984).

█ The court must further consider whether the decision of the Commissioner contains a material error of law. In *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987), the court held:

> Despite this limited review, we scrutinize the record in its entirety to determine the reasonableness of the secretary's factual findings. *Bridges,* 815 F.2d at 624; *Arnold v. Heckler,* 732 F.2d 881, 883 (11th Cir.1984). No similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims. *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982).

█ Having evaluated the evidence, the court holds that substantial evidence does not support the decision denying disability benefits. Improper legal standards were applied.[25]

1) The ALJ failed to give proper weight to the opinion of the treating physician that plaintiff is disabled. *Wiggins v. Schweiker,* 679 F.2d 1387.

2) The ALJ impermissibly gave more weight to the opinions of non-examin-

---

**25.** Some of these reasons have previously been discussed and outlined. Discussion of those not previously discussed will follow.

ing consulting physicians. The reports of non-examining medical personnel on which the ALJ relied are underinclusive and fail to encompass all limitations of record as required. *Foote v. Chater,* 67 F.3d 1553 (11th Cir.1995); *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir.1987). Furthermore, the regulations give preference to the opinion of the treating physician. 20 CFR § 404.1527(d)(2). *See, Lewis v. Callahan,* 125 F.3d 1436 (11th Cir.1997) ("The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error.") (citing *MacGregor,* 786 F.2d at 1053).

3) The ALJ failed to include the entire opinion of consultant Dr. Lary which specifically stated plaintiff's ability to lift, carry, and manipulate small objects is impaired by her wrist drop. Plaintiff's ability to "frequently" lift or carry precludes light work.

4) The ALJ's inaccuracies and mischaracterizations taint the record and do not rise to substantial evidence.

5) The ALJ failed to ask the vocational expert a hypothetical question based on full and accurate information. *Wilson v. Barnhart,* 284 F.3d 1219 (11th Cir.2002).

6) The ALJ failed to give proper weight to plaintiff's pain testimony. Nothing discredits the pain testimony. As a matter of law it is accepted. *Brown v. Sullivan,* 921 F.2d 1233 (11th Cir. 1991).

■ As indicated earlier the hypothetical question posed to the vocational expert was not accurately stated.[26] ALJ Hamm changed the doctor's diagnosis of "acute" pain to "moderate" pain. He did not reference plaintiff's retrohumeral radial neuropathy. In his decision ALJ Hamm stated the following: "The vocational expert testified that assuming the hypothetical individual's specific work restrictions, she is capable of making a vocational adjustment to other work." He then concluded that "[b]ased on the testimony of the vocational expert," plaintiff's education, age, work experience, and residual functional capacity plaintiff is able to make a successful adjustment to other work within the framework of Medical–Vocational Rule 202.20. Our circuit, however, in *Wilson v. Barnhart,* 284 F.3d 1219 (11th Cir.2002), held the following: "In order for vocational expert's testimony to constitute substantial evidence (of social security disability benefits claimant's residual functional capacity to work), the ALJ must pose a hypothetical question which composes all of the claimant's impairments. *See Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir.1999), *cert denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000)." This same case stated that if nonexertional impairments exist, as in the instant case, the ALJ may use Medical–Vocational Guidelines as a framework to evaluate vocational factors, "but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform." The ALJ never mentioned plaintiff's retrohumeral radial neuropathy

**26.** The question assumed plaintiff is able to do a limited range of light work: lift up to 20 pounds occasionally; frequently lift and carry 10 pounds; stand a total of one hour and sit a total of seven hours in an eight hour work day; perform no arm and hand repetitive pushing and pulling moves; occasionally bend, stoop, and squat; perform no climbing and working around hazardous moving machines and unprotected heights; **moderate pain**; mental capabilities to do work related activities in regular work setting on day-to-day basis fair or better.

to the vocational expert. His omissions and mischaracterizations of the evidence cannot stand as a basis for the vocational expert's answer on which he relies. The hypothetical was not correct.

For the reasons set forth above the court HOLDS that the decision of the Commissioner is REVERSED.[27] The decision is a clear miscarriage of justice. An order consistent with this opinion is being entered contemporaneously herewith.

### FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of Social Security be and it hereby is REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be granted the benefits claimed.

It is FURTHER ORDERED that the Commissioner withhold from payments which he may determine are due plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of section 206 of the Social Security Act, as amended 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fees to be allowed plaintiff's counsel for services rendered in representing the plaintiff in this cause.

It is FURTHER ORDERED that pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby GRANTED an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. ***This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.***

---

27. As an aside, the court must comment that the opinion of the second ALJ is useful to show plaintiff is credible. It defies common sense to say plaintiff has only "moderate" pain when one day later she is found to have disabling pain. This circumstance makes her credible.